IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **CHRISTOPHER DEE COTTON** | § | **Case No. 14-30287** |
| **ALLISON HEDRICK COTTON** | § | **Chapter 13** |
| | § | |
| **Debtors** | § | |

| | | |
|---|---|---|
| | § | |
| **CHRISTOPHER DEE COTTON,** | § | |
| **ALLISON HEDRICK COTTON,** | § | **Adv. Proceeding No. 17-03056** |
| **IGNACIO PEREZ, and** | § | |
| **GABRIELA PEREZ,** | § | **District Court Case No. 18-00499** |
| *on behalf of themselves and all* | § | |
| *others similarly-situated,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WELLS FARGO & CO. and** | § | |
| **WELLS FARGO BANK, N.A.** | § | |
| | § | |
| **Defendants.** | § | |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS AND CLASS
REPRESENTATIVE SERVICE AWARDS**

# TABLE OF CONTENTS

Introduction ........................................................................................................................1

Argument and Authorities .................................................................................................5

   I.   The Court should award class counsel's requested attorneys' fees and expenses
      and class representatives' service awards ................................................................5

      A.  Class counsel's requested fees and expenses for this case are reasonable
          and appropriate ..............................................................................................5

      B.  A percentage-of-recovery attorney fee award is appropriate and reasonable
          compensation for class counsel in this case ..................................................6

         1.  The settlement class counsel negotiated achieves an outstanding
            and extremely value result for the class ..............................................8

         2.  Class counsel took significant risks and overcame major obstacles
            to prosecute and settle the class members' claims in this case ........... 11

         3.  The requested fee of 33% of the recovery is reasonable in light
            of fees awarded in comparable cases ................................................ 16

         4.  Class counsel's requested fees is supported by a lodestar cross-check .............. 18

         5.  Class counsel is entitled to reimbursement of their reasonable expenses
            in the amount of $54,466.77 .............................................................. 20

   II.  The Class Representatives have earned their service awards, which are
      reasonable and appropriate ................................................................................ 20

Conclusion ...................................................................................................................... 22

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS**     **PAGE i**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 2 of 29

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Allen v. U.S.,*
  606 F.2d 432 (4th Cir. 1979) ........................................................................5, 8
*Anselmo v. West Paces Hotel Group, LLC,*
  No. 9:09-cv-02466, 2012 WL 5868887 (D.S.C. 2012) ................................17
*Barber v. Kimbrell's Inc.,*
  577 F.2d 216 (4th Cir. 1978) ........................................................................5, 8
*Beiter v. Chase Home Finance, LLC, et al., (In re Beiter),*
  590 B.R. 446 (Bankr. S.D. Ohio 2018) ..........................................................12
*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.,*
  807 F.3d 600 (4th Cir. 2015) ......................................................................... 22
*Blum v. Stenson,*
  465 U.S. 886 (1984) ..........................................................................................7
*Boeing Co.,*
  444 U.S. ........................................................................................................6, 7
*Bussie v. Allmerica Fin. Corp.,*
  No. 97-40204, 1999 WL 342042 (D. Mass. May 19, 1999) .........................18
*Cano v. GMAC Mortgage Corp.* (*In re Cano*),
  410 B.R. 506 (Bankr. S.D. Tex. 2009) ...........................................................13
*Cook v. Niedert,*
  142 F.3d 1004 (7th Cir. 1998) ....................................................................... 22
*Deloach v. Philip Morris Cos.,*
  No. 1:00CV01235, 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) .............19
*Durm v. Am. Honda Fin. Corp.,*
  WDQ-13-223, 2015 WL 6756040 (D. Md. Nov. 4, 2015) ........................... 6
*Finley v. Carrington Mortgage Services, LLC,*
  AP No. 08-00192-JJR, 2016 WL 519631 (N.D. Ala. Feb. 9, 2016)..............12
*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000) .............................................................................11
*Goldenberg v, Marriott PLP Corp.,*
  33 F. Supp. 2d 434 (approving 3.6 multiplier) .............................................19
*In re Abrams & Abrams, P.A.,*
  605 F.3d 238 (4th Cir. 2010) ................................................................. passim
*In re Cardinal Health Securities Litigation,*
  528 F. Supp. 2d 752 (S.D. Oh. 2007)..............................................................19
*In re Cendant Corp. Prides Litigation,*
  243 F.3d 722 (3rd Cir. 2001).............................................................................5
*In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.,*
  No. 3:09-cv-00054, 2012 WL 5430841 (D.S.C. Nov. 7, 2012) ................... 6
*In re Rite Aid Corp. Sec. Litig.,*
  146 F. Supp. 2d 706 (E.D. Pa. 2001)...............................................................17

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**       **PAGE ii**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 3 of 29

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y 2005) ...................................................18
*Jones v. Wells Fargo Home Mortgage (In re Jones)*,
   489 B.R. 645 (E.D. La. 2013) ...........................................................12
*Jones v. Wells Fargo Home Mortgage (In re Jones)*,
   2012 WL 1155715 (Bankr. E.D. La. Apr. 5, 2012) ..................... 12, 13
*Kay Co. v. Equitable Prod. Co.*,
   749 F. Supp. 2d 455 (S.D. W. Va. 2010) ..............................................7
*Kidrick v. ABC Television & Appliance Rental, Inc.*,
   No. 97-cv-0069, 1999 WL 1027050 (N.D. W.Va. May 12, 1999) ...................... 8, 17
*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir.1986) ...........................................................15
*Kruger v. Novant Health*,
   No. 1:14cv208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .....................7
*Savani v. URS Prof'l Sols. LLC*,
   121 F. Supp. 3d 564 (D.S.C. 2015) ................................................ 6, 17
*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*,
   576 B.R. 84 (Bankr. S.D. Tex. 2017) ...............................................12
*Manuel v. Wells Fargo Bank Nat'l Ass'n*,
   No. 3:14-cv-238(DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016).................. 22
*Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*,
   244 B.R. 845 (Bankr. S.D. Ala. 2002) ..............................................12
*Payne v. Sprint Commc'ns Co. L.P.*,
   No. 11- 3434, 2012 WL 13006270 (D. Md. Nov. 30, 2012)........................7
*Phillips v. Triad Guaranty Inc.*,
   1:09cv71, 2016 WL 2636289 (M.D.N.C. May 9, 2016) ......................... 8
*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................................11
*Reed v. Big Water Resort, LLC*,
   No. 2:14-cv-01583, 2016 WL 7438449 n.3 ........................................17
*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992)......................................................11
*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (1994) ..................................................................... 20
*Scott v. Family Dollar Stores, Inc.*, 3:08-cv-00540-MOC-DSC,
   2018 WL 1321048 (W.D.N.C. March 14, 2018) ............................... 22
*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013).................................................19
*Smith v. Krispy Kreme Doughnut Corp.,* No.,
   1:05CV00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) .......................10
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................... 22
*Tate v. NationsBanc Mortgage Co. (In re Tate)*,
   253 B.R. 653 (Bankr. W.D.N.C. 2000) .............................................13

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS          PAGE iii**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 4 of 29

*Teague v. Bakker*,
    213 F. Supp. 2d 571 (W.D.N.C. 2002) ..................................................................7
*Tollstrup*,
    Case No. 15-33924, 2018 WL 1384378 (Bankr. Mar. 16, 2018) ...............................12
*Trustees v. Greenough*,
    105 U.S. 527 (1882) .............................................................................................7
*United States v. Tobias*,
    935 F.2d 666 (4th Cir. 1991) ................................................................................ 6
*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................18
*Wells v. Sullivan*,
    907 F.2d 367 (2d Cir. 1990) ........................................................................ 14, 15

Statutes

11 U.S.C. § 105(a) ....................................................................................................12

Rules

Fed. R. Civ. P. 23(b)(3) ............................................................................................16
Fed. R. Civ. P. 23(h) ..................................................................................................5
Fed R. Bankr. P. 3002.1.......................................................................... 3, 12, 13, 15

Other Authorities

4 Newberg on Class Actions § 11:38 ........................................................................33
Manual for Complex Litigation, §14.121 at 187 (4th ed. 2011) ....................................7
Newberg on Class Actions § 15:73 ...........................................................................25

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS**    **PAGE iv**
Case 3:18-cv-00499-RJC    Document 5    Filed 01/03/19    Page 5 of 29

Plaintiffs Christopher Dee Cotton, Allison Hedrick Cotton, Ignacio Perez, and Gabriela Perez ("Plaintiffs"), individually and on behalf of all other similarly situated individuals, with the consent of Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Defendants"), move for an order awarding attorneys' fees, expenses, and class representative service awards. For the reasons listed below, the Court should award the requested attorneys' fees, expenses, and class representative service awards.[1]

## INTRODUCTION

In the proposed settlement that Class counsel negotiated in this case, Wells Fargo will pay $13.46 million to establish a Settlement Fund for the benefit of Class Members, who are the borrowers on approximately 6,000 mortgage loan accounts that Wells Fargo subjected to its "No-Application Modification" ("NAM") program without their prior knowledge or consent. Unless they elect to opt out, borrowers on approximately 1,000 of these mortgage loan accounts will receive $3,800.00 in cash per account, and borrowers on approximately 2,090 of these mortgage loan accounts will receive at least $2,200.00 in cash per account. Unless they elect to opt out, every participating class member will receive at least $100.00 in cash per account under this settlement. Wells Fargo has also provided an additional $366,376.39 in account remediation to

---

[1] Plaintiffs attach to this memorandum the declarations of Karen Kellett (<u>Exhibit 1</u>), Theodore O. Bartholow, III (<u>Exhibit 2</u>), O. Max Gardner, III (<u>Exhibit 3</u>), Frederick L. Henderson, Jr. (<u>Exhibit 4</u>), Abelardo Limon (<u>Exhibit 5</u>), and Caitlyn N. Wells (<u>Exhibit 6</u>) in support of both their fee motion and their to-be-filed motion for final approval of the class settlement.

Plaintiffs are filing this motion by January 3, 2019, as set forth in the bankruptcy court's order of preliminary approval. Class members' objections and opt outs are not due until February 2, 2019, and Plaintiffs' motion for final approval is not due until February 18, 2019. Plaintiffs will more fully explain the case and settlement, address any objections, and file any additional materials in support of their final-approval and fee motions by February 18, 2019.

Class Members as a result of Class Counsel's pre-suit objections and related investigation into Wells Fargo's "stealth" no application modification practices.

In addition, as a direct result of Plaintiffs' and their attorneys' efforts, Wells Fargo ended its practice of unilaterally imposing unsolicited trial modifications on Chapter 13 debtors. Also because of Plaintiffs' and their attorneys' efforts, Wells Fargo agreed to refrain from pursuing relief from the Bankruptcy Code's automatic stay and from foreclosing on the homes of borrowers who filed a Chapter 13 bankruptcy who were subjected to Wells Fargo's solicitations for "no-application modifications" and Rule 3002.1 payment change notices based on trial payments for unsolicited no-application modifications. This moratorium has been in place officially since September 25, 2017,[2] and Wells Fargo has agreed to leave it in place until after the settlement funds have been distributed to the class members so that the class members will have a reasonable amount of time to deposit and apply their share of the settlement funds to cure, in whole or in part, whatever accumulated arrearages they may owe. Since Wells Fargo's no-application modification solicitations and Bankruptcy Rule 3002.1 payment change notices often created arrearages, this moratorium has been and is especially crucial for many class members. Accordingly, when considering the reasonableness of class counsel's fee request in this case in light of the results obtained by class counsel, in addition to Wells Fargo's direct monetary payments to class members under the terms of the class settlement in this case, the Court should give substantial weight to the fact that class members received substantial intangible relief and significant indirect monetary

---

[2] On June 16, 2017, Wells Fargo stated in the Chapman Declaration (Cotton AP Docket No. 38-3, at p. 6) and the Gugino Declaration (AP Docket No. 38-5, at p. 2) that it unilaterally instituted a "hold" on motions for relief from automatic stay and foreclosures for all known accounts solicited for NAM for which Wells Fargo filed 3002.1 notices.

benefits.

These achievements are the product of class counsel's substantial efforts in vigorously contested, often contentious litigation and multiple days of hard-fought arms-length mediated negotiations. Before settlement negotiations began in the Cotton case, class counsel insisted on receiving and extensively analyzed Wells Fargo's voluminous confidential pre-mediation discovery. This discovery included granular account-level information for all putative class members, as well as other Wells Fargo internal records and documents related to its NAM program for borrowers in Chapter 13 bankruptcy. Meanwhile, class counsel obtained critical discovery in the Perez case, including deposition testimony of Wells Fargo employees that proved instrumental in developing Plaintiffs' theory of liability and revealing the mechanics of Wells Fargo's NAM program for Chapter 13 debtors.

The Plaintiffs sued Wells Fargo to put an end to and provide remedies for the harms created by its practice of soliciting Chapter 13 debtors for pre-approved "trial" loan modifications of their existing mortgage loans. Wells Fargo calls these loan modifications "no-application modifications," or NAMs. In many class members' Chapter 13 cases, Wells Fargo also filed Fed R. Bankr. P. 3002.1 payment change notices ("PCNs") at or near the same time it sent out the NAM solicitations. These PCNs falsely asserted that the debtors' mortgage payments had changed to the amount of the proposed trial NAM payment, even though the borrowers had not requested or accepted the proposed NAMs. In many cases, these PCNs caused debtors' Chapter 13 trustees to make distributions for debtors' monthly mortgage payments in the (typically reduced) NAM trial payment amount instead of the amount of their full contractual mortgage payments, without the debtors' prior consent. Wells Fargo's NAM program and the PCNs Wells

Fargo filed in class members' Chapter 13 cases created havoc in class members' bankruptcies and caused class members' mortgage loans to go into contractual default. Wells Fargo's NAM solicitations and other communications also contained false and/or misleading statements, which Plaintiffs allege are in violation of bankruptcy and other consumer protection laws.

Additionally, escrow accounts for taxes and insurance were mandatory for mortgage loan accounts under Wells Fargo's no application modification program. As a result, borrowers whose loans were not previously escrowed for taxes and insurance[3] (because they were making tax and/or insurance payments themselves) were forced to make higher monthly mortgage payments in order to fund the escrow accounts Wells Fargo unilaterally established without the borrowers' prior knowledge or consent. Thus, at a minimum, Wells Fargo's imposition of escrow accounts would disrupt these borrowers' financial planning and require adjustments to their Chapter 13 plans. At worst, the increased monthly mortgage payments could cause borrowers substantial financial hardship and undermine their ability to maintain their monthly Chapter 13 plan payments, potentially resulting in dismissal from bankruptcy and eventual foreclosure of their homes.

Indeed, class counsel's discovery in this case confirmed that Wells Fargo did use the post-petition contractual delinquencies it created by applying payments in the reduced amount of its unsolicited trial modification payments as a basis for filing motions for relief from the automatic stay with the bankruptcy courts and to foreclose on affected borrowers' homes. Additionally, upon completion of their Chapter 13 bankruptcies, Wells Fargo would report class members' loans to the credit bureaus as contractually delinquent to the extent that its unilateral imposition of the trial payments resulted in the loans becoming contractually underpaid. Without Plaintiffs' and class

---

[3] No-escrow loans are often preferred by borrowers whose income is received on an irregular schedule.

counsel's intervention and the settlement of this case, it is possible that Wells Fargo would still be engaging in these practices.

## ARGUMENT AND AUTHORITIES

**I.   The Court should award class counsel's requested attorneys' fees and expenses, and class representatives' service awards.**

**A.   Class counsel's requested fees and expenses for this case are reasonable and appropriate.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  A common fund settlement should pay class counsel based on the value produced for the class.  Awarding class counsel's attorneys' fees on a percentage-of-recovery basis, with a cross-check against counsel's lodestar is the traditional method for evaluating the reasonableness of the requested fee.  In particular, when considering the reasonableness of class counsel's percentage-of-recovery fee request, courts in the Fourth Circuit focus on three main issues: (i) the value of and skill of counsel's work and the results obtained; (ii) the risks and obstacles counsel faced; and, (iii) quantitative inputs like time and labor expended, the customary fee for like work, and other awards in similar cases.[4]

Application of these standards in this case confirms that class counsel's requested fees are reasonable and appropriate. Class counsel include experienced, highly-regarded, and nationally-recognized attorneys, including attorneys at Kellett & Bartholow PLLC who have litigated

---

[4] *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n. 28 (4th Cir. 1978); *Allen v. U.S.*, 606 F.2d 432, 436 n.1 (4th Cir. 1979)(same).   *See also In re Cendant Corp. Prides Litigation*, 243 F.3d 722 (3rd Cir. 2001)(establishing criteria for evaluation of class counsel's fee request from common fund).

contested class certification evidentiary hearings and a certified class action to judgment on behalf

of consumer debtors who filed for Chapter 13 bankruptcy protection.  In particular, class counsel's

individual and class action cases frequently involve allegations that creditors violated Chapter 13

debtors' rights under the Bankruptcy Code and related consumer-protection laws.  Few currently

practicing attorneys have comparable experience representing consumer bankruptcy debtors as

class plaintiffs in this unique and complex context.  *See* Exhibit 1, Kellett Decl., p. 19, ¶¶ 60-61, p.

21, ¶¶ 64-81; Exhibit 2, Bartholow Decl., p. 12-15, ¶¶ 46-55; Exhibit 3, Gardner Decl., p. 10-11, ¶¶

36-40; Exhibit 4, Henderson Decl., p. 7-8, ¶¶ 25-29.

## B. A percentage-of-recovery attorney fee award is appropriate and reasonable compensation for class counsel in this case.

In the Fourth Circuit, the percentage-of-recovery approach "is the preferred approach to

determine attorney's fees."  *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C.

2015)(citing cases).  *Durm v. Am. Honda Fin. Corp.,* WDQ-13-223, 2015 WL 6756040, at *6 (D.

Md. Nov. 4, 2015) (district courts in Fourth Circuit use the percentage of recovery method in

common fund cases).  *See also* Manual for Complex Litigation, §14.121 at 187 (4th ed. 2011)("the

vast majority of courts of appeals now permit or direct district courts to use the percentage-fee

method in common-fund cases").[5]

Under this method, class counsel's fees are calculated as a percentage of the class recovery

---

[5] The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund
for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the
fund as a whole."  *Boeing Co.*, 444 U.S. at 478; *United States v. Tobias*, 935 F.2d 666, 667 (4th Cir.
1991)(explaining equitable basis of the "common fund" doctrine).  "It is also viewed as the preferable
method in cases, such as this one, where the Plaintiff agreed to pay counsel on a contingency fee basis."  *In
re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-cv-00054, 2012 WL
5430841, at *2 (D.S.C. Nov. 7, 2012).

"as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing a line of decisions dating to *Trustees v. Greenough*, 105 U.S. 527 (1882)); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)("[T]he calculation of attorney's fees under the 'common fund doctrine[…]' is based on a percentage of the fund *bestowed on* the class[.]")(emphasis added). Thus, it is "appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class[.]" *Payne v. Sprint Commc'ns Co. L.P.*, No. 11- 3434, 2012 WL 13006270, at *2 (D. Md. Nov. 30, 2012)(citing *Boeing Co.,* 444 U.S. at 479).

The percentage-of-recovery method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 462 (S.D. W. Va. 2010). Under this approach, plaintiffs' counsel have a strong incentive to obtain the maximum possible recovery for the class in the shortest time possible under the circumstances, because it removes the incentive present under the lodestar method for class counsel to over-litigate or draw out cases in an effort to increase the number of hours used to calculate their fees. *See Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002)("[A]n award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund."). The percentage-of-recovery approach also eliminates the burden on the court to engage in a detailed review and calculation of attorneys' hours and rates. *Kruger v. Novant Health*, No. 1:14cv208, 2016 WL 6769066, *4 (M.D.N.C. Sept. 29, 2016).

Class counsel seeks 33% of the Total Settlement Fund amount of $13,826,376.40 as their fee in this case. This one-third percentage is in line with fee awards in common-fund class action

CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS          PAGE 7

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 12 of 29

settlements in the Fourth Circuit.  *See, e.g., Kidrick v. ABC Television & Appliance Rental, Inc.,* No. 97-cv-0069, 1999 WL 1027050, at *2 (N.D. W.Va. May 12, 1999)(noting that awards of 30%, 35%, and even 50% have been held reasonable).

   1.   **The settlement class counsel negotiated achieves an outstanding and extremely valuable result for the Class.[6]**

   In the Fourth Circuit, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010)(internal quotation marks omitted).[7]   The settlement in this case provides significant monetary and other relief for class members, and it provides extended protections against Wells Fargo's attempts to lift the automatic stay and/or foreclose on borrowers' homes.   The class members all benefit, with a majority receiving in excess of $2,200.00 in cash, in addition to other intangible relief.   Class counsel therefore consider this settlement an extremely successful and beneficial result for the class members.   Exhibit 1, Kellett Decl. p. 9, ¶ 30, n. 7; p. 10, ¶¶ 34-36.

   The settlement was achieved through a multi-day mediated settlement process that included extensive discovery, resulting in settlement terms that were vastly superior to Wells Fargo's stated position in the litigation that its remediation of $366,376.39 for just 393 Class members was the only remedy any class members were entitled to receive.[8]   As a result of class

---

[6] This first broad category incorporates the following factors identified by the Fourth Circuit in *Allen*, 606 F.2d at 432 and *Barber,* 577 F.2d at 216: (3) the skill required to perform the necessary legal services; (8) the award involved and the results obtained; (9) the experience, reputation, and ability of the lawyer.

[7] Although *Abrams* was not a class action seeking fees from a common fund, it is often cited in percent-of-recovery class action cases for its discussion of contingency fees.  *Phillips v. Triad Guaranty Inc.*, 1:09cv71, 2016 WL 2636289, at *3 (M.D.N.C. May 9, 2016) (citing *Abrams*).  *See, e.g., Abrams*, 605 F.3d at 244.

[8] Exhibit 2, Bartholow Decl., p. 8-10, ¶¶ 27-38.  Wells Fargo only provided the remediation as a result of

counsel's additional efforts, Wells Fargo agreed to contribute $13,460,000.00 to settle this case and provide relief to borrowers for approximately 6,000 mortgage loan accounts, in addition to the $366,376.39 in account remediation. Exhibit 1, Kellett Decl. p. 9, ¶ 30.

Importantly: this is not a claims-made settlement. Settlement class members will not have to do anything to receive their cash payment. Additionally, many settlement class members also received a credit to their mortgage account when Wells Fargo provided remediation.

The class members, as well as any other current or future Chapter 13 debtors with mortgages serviced by Wells Fargo, also benefit from class counsel's efforts and the settlement because Wells Fargo has ceased its practice of soliciting debtors in Chapter 13 bankruptcies for its no-application modification program on a nationwide basis on January 6, 2017. Exhibit 2, Bartholow Decl. p.7, ¶ 24. Wells Fargo also placed a moratorium on foreclosures and motions for relief from the automatic stay in order to foreclose against current and former Chapter 13 debtors that were subjected to its unsolicited trial modifications. *See id.* Wells Fargo formalized this injunctive relief in September 2017 at class counsel's insistence, as a condition of Plaintiffs' agreement to enter into settlement negotiations in this case. *Id.* at p. 8-9, ¶¶ 28-29. As a result, class counsel protected the members of this class and others from losing their homes during settlement negotiations in this case. Moreover, the settlement requires Wells Fargo to leave these foreclosure and stay-relief moratoria in place until after the class members receive payment for

---

class counsel's appearing in the underlying bankruptcy and insisting on Wells Fargo providing information on all no-application modifications and payment change notices in the bankruptcy courts for the Western District of North Carolina. It was during this process that Wells Fargo discovered and finally admitted that its practices were placing Chapter 13 debtors into default, and that Wells Fargo needed to provide, at a minimum, remediation to such borrowers in amounts that equaled the discrepancy between the actual payment and the change payment, and the number of months paid at the altered amounts. *See* Exhibit 1, Kellett Decl., p. 9, ¶ 30, n. 7.

their shares of the settlement, giving class members the benefit of additional time and money to cure any existing delinquency on their mortgage loans.

The settlement also provides many debtors and former debtors with benefits that they would otherwise have been unlikely to obtain. <u>Exhibit 1</u>, Kellett Decl. p. 11, ¶ 36. The value of the benefits class members will receive under this settlement is enhanced by the fact that the benefits will be provided promptly, without the delay, burden, and risks of further litigation. *Id*. This factor is especially important in this case, as the class members are in dynamic situations. Many are still in Chapter 13 bankruptcies, and most are still paying on their mortgage loans. *Id*. The settlement payments will compensate the class members for defaults in their mortgage accounts that Wells Fargo caused, and the class members can use the funds to cure any such defaults if they still exist.

Class counsel has described their reputation and achievements in their declarations, as well as their specialized practice in this area. <u>Exhibit 1</u>, Kellett Decl., p. 21, ¶ 64; <u>Exhibit 2</u>, Bartholow Decl., p. 11-15, ¶¶ 39-54; <u>Exhibit 3</u>, Gardner Decl., p. 2-7, ¶¶ 2-16; <u>Exhibit 4</u>, Henderson Decl., p. 2, ¶¶ 3-5; <u>Exhibit 5</u>, Limon Decl., p. 1-2, ¶¶ 3-5. "Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel." *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007). Here, class counsel litigated against an exceptionally well-funded defendant represented by two huge, well-respected,

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS**          **PAGE 10**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 15 of 29

international law firms.[9]  The Plaintiffs, on the other hand, were represented by one small, five-lawyer firm, a solo practitioner, and a small consumer bankruptcy law firm.[10]

### 2. Class counsel took significant risks and overcame major obstacles to prosecute and settle the class members' claims in this case.[11]

The second category of *Barber* factors assesses the risks counsel faced.  Courts have recognized that an attorney's risk is a "foremost factor" in determining an appropriate fee award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000); *In re Abrams*, 605 F.3d 238, 246-47 (holding that district court's failure to consider substantial risks when awarding fee was error); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007)(surveying cases); *Ressler v. Jacobson,* 149 F.R.D. 651, 656-57 (M.D. Fla. 1992)("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.... In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.").  For class counsel, the risk of non-payment was very real. [12]

---

[9] Wells Fargo is the third largest bank in the U.S., with $1.95 trillion in assets.  Amanda Dixon, *America's 15 largest banks*, BANKRATE (February 21, 2018), www.bankrate.com/banking/americas-top-10-biggest-banks.  Wells Fargo's counsel are McGuire Woods LLP and Locke Lord LLP.  McGuire Woods employs over 1,100 lawyers in 27 cities in the U.S., Europe, and Asia.  At least five McGuire Woods attorneys worked on this case.  Exhibit 1, Kellett Decl., p. 5, ¶ 3.  Locke Lord employs over 650 lawyers in 20 cities in the U.S., Europe, and Asia.  At least four Locke Lord attorneys worked on the Perez case.  *Id.* at p. 3, ¶ 8.

[10] Mr. Gardner is of counsel to Kellett & Bartholow PLLC.  Ms. Clontz left the firm as of June 15, 2018, so Kellett & Bartholow now has only four attorneys, including Mr. Gardner.

[11] The risks and obstacles counsel faced include the following *Allen/Barber* factors: (2) the novelty and difficulty of the questions presented; (4) the preclusion of other employment by the lawyer due to acceptance of the case; (6) the contingency of a fee; (7) the time pressures imposed in the case; (10) the "undesirability" of the case.

[12] Debtors in bankruptcy with bankruptcy counsel generally cannot, by definition, afford to hire and pay

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**          **PAGE 11**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 16 of 29

(i) General risks of this case:

- Cases like this can take a long time and be very expensive and time consuming, without any guarantee of success or compensation for putative class counsel.

- It is always possible that class representatives will become non-responsive, die, and/or decide they are unwilling to continue as class representatives, or that their Chapter 13 bankruptcy cases will complete, convert to Chapter 7, or be dismissed prior to final resolution of the case.[13]

- Regulatory action or changes in the law can moot claims.

- Class claims on behalf of consumer bankruptcy debtors can be difficult to maintain on a nationwide basis, and there is ambiguity in the law regarding (i) Bankruptcy Court authority to determine claims of debtors outside of the district in which the Bankruptcy Court sits, as well as (ii) whether, and to what extent a Bankruptcy Court may authorize the relief Plaintiffs sought in this case.[14]

---

counsel to prosecute a case like this, which involves complex legal and factual issues. *See Jones v. Wells Fargo Home Mortgage (In re Jones)*, 2012 WL 1155715, at * 1-2, 6-10 (Bankr. E.D. La. Apr. 5, 2012)(slip opinion), aff'd, *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 489 B.R. 645 (E.D. La. 2013)(discussing resources of chapter 13 debtors and awarding attorneys' fees). *See* Exhibit 1, Kellett Decl., p. 12, ¶¶ 41-44, p. 19, ¶¶ 60-61; Exhibit 3, Gardner Decl., p. 9, ¶¶ 29-38; Exhibit 4, Henderson Decl., p. 7, ¶¶ 25-28. Moreover, most debtors' bankruptcy attorneys simply do not have the expertise and cannot afford either the time or expense of such complex litigation. *See Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 576 B.R. 84, 97-100 (Bankr. S.D. Tex. 2017). Kellett & Bartholow is one of the few firms in the country to bring and successfully litigate class actions on behalf of borrowers in or formerly in a Chapter 13 bankruptcy proceeding. Law firms will not bring these cases due to the substantial risks involved, and those that do usually fail due to the risks and obstacles inherent in a case of this type. *See id.* Class counsel currently is aware of only a few other class actions brought by Chapter 13 debtors to enforce Fed. R. Bankr. P. 3002.1. Exhibit 1, Kellett Decl., p. 20, ¶ 61. *Beiter v. Chase Home Finance, LLC, et al., (In re Beiter)*, 590 B.R. 446, 456 (Bankr. S.D. Ohio 2018)(denying defendants' motions to dismiss in pending district-wide class action for violations of 3002.1 and orders deeming debtors mortgages current). *See Finley v. Carrington Mortgage Services, LLC*, AP No. 08-00192-JJR, 2016 WL 519631 (N.D. Ala. Feb. 9, 2016)(slip opinion)(denying certification of Chapter 13 class and denying debtor's motion to supplement class complaint).

[13] In a study of Chapter 13 cases closed between 2010 and 2016, only 31.6% of the Chapter 13 debtors achieved a Chapter 13 discharge. Ed Flynn*, Dead-on-Arrival Cases* (*at Bankruptcy Court*), ABI Journal, January 2018, at 54, 82.

[14] Victory was anything but assured, with court opinions around the nation being substantially divided on the issues. *Compare Finley*, cited in fn. 9; *In re Tollstrup*, Case No. 15-33924, 2018 WL 1384378 *5 (Bankr. Mar. 16, 2018)(court has no power under Fed. R. Bankr. P. 3002.1 or 11 U.S.C. § 105(a) to award sanctions for violation of Rule 3002.1) *with Noletto v. Nationsbanc Mortgage Corp.* (*In re Noletto*), 244 B.R. 845, 849 (Bankr. S.D. Ala. 2002)(permitting nationwide class and use of 11 U.S.C. § 105(a) to enforce bankruptcy

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS** **PAGE 12**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 17 of 29

- Wells Fargo is a massive and well-financed corporate defendant that had effectively unlimited resources to litigate this case and appeal any adverse results. Indeed, Wells Fargo, more than many of its corporate peers, has a reputation for vigorously litigating and appealing cases and judgments against it.[15]

(ii) Specific obstacles presented by this case:

- The Rule 3002.1 payment change notices at issue are difficult to identify and distinguish from the far more common proper 3002.1 notices (routinely filed by mortgage servicers for interest rate adjustments and escrow payment changes) without looking at each one individually.

- Based on our research, we found that attorneys for the affected Chapter 13 debtors were generally not independently taking notice of or otherwise seeking to address the grave issues presented by Wells Fargo's no-application trial modifications and Rule 3002.1 notices. As a result, it was challenging for class counsel to determine the scale of the issue and/or whether it was a case-by-case issue versus the systemic problem that class counsel was able to resolve through the settlement in this case.

- Wells Fargo tried to withdraw its notices in the class representatives' cases, in an attempt to moot the class claims. Without Class Counsel's diligence in opposing Wells Fargo's attempted withdrawals, these efforts likely would have succeeded.

- In the Cotton case, Wells Fargo attempted to evade liability by claiming to have "remediated" all "impacted" accounts of borrowers in the Western District of North Carolina. Class Counsel exposed Wells Fargo's remediation efforts as false and wholly inadequate.

- In the Cotton adversary proceeding, Chief Bankruptcy Judge Beyer specifically expressed concern over the issue of whether the Bankruptcy Court would have authority - in a contested case - to issue the nationwide injunction that Plaintiffs were seeking, noting prior case law from another Bankruptcy Judge from the Western District of North Carolina questioning whether such relief was available. *See Tate v. NationsBanc Mortgage Co.* (*In re Tate*), 253 B.R. 653 (Bankr. W.D.N.C. 2000).

---

rights); *Cano v. GMAC Mortgage Corp.* (*In re Cano*), 410 B.R. 506, 542-43 (Bankr. S.D. Tex. 2009)(same).

[15] *See Jones*, 2012 WL 1155715, at * 1-2, 6-10 (debtor's attorneys' fees and expenses in *individual* case against Wells Fargo were $292,673.84). Kellett & Bartholow's experience with Wells Fargo has been similar. Exhibit 1, Kellett Decl., p. 14, ¶ 43, n. 15.

- Wells Fargo resisted discovery in both Cotton and Perez, initially opposing class counsel's efforts to depose Wells Fargo's employees regarding its practices. Likewise, in Perez, Wells Fargo failed to comply with its discovery obligations, which required class counsel to prepare a contested motion to compel after attempted discovery conferences proved fruitless.[16]

- Wells Fargo also employed aggressive tactics while litigating the Perez adversary proceeding, including seeking, for improper purposes, to compel the depositions of class counsel, Mr. Limon and Ms. Kellett and attempting to invade Plaintiffs' attorney-client and work product privileges. As a result, counsel thoroughly briefed, prepared for, and argued these issues at multiple court hearings and ultimately prevailed.

- Because neither Perez nor Cotton was venued where Kellett & Bartholow's attorneys live and office, both cases routinely involved out-of-town air travel and overnight stays, which limited counsel's time for working on other matters and increased the overall expense and burden of this litigation for class counsel.

- Class counsel also took the Cotton class action on a contingency basis, and the class representatives, as Chapter 13 bankruptcy debtors, were obviously in no position financially to pay counsel for their services.

*See* Exhibit 1, Kellett Decl., p. 12, ¶¶ 41-45. These risks and obstacles support class counsel's fee request. The Fourth Circuit in *In re Abrams*, 605 F.3d at 238 stressed the importance of honoring the contingency fee of attorneys who take on difficult litigation such as this, because contingency fees are an acknowledged feature of our legal landscape, approved by legislative and judicial bodies alike that help secure for the impecunious access both to counsel and to court. *Id.* at 245 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)("[A]ccepting reasonable contingency agreements... increases the likelihood that a claimant can find an attorney sufficiently committed and skilled to litigate successfully.")).

> Access to the courts would be difficult to achieve without compensating attorneys for that risk. … In addition, it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of any recovery. "[M]any attorneys are unwilling to accept the risk of nonpayment

---

[16] As a result of the settlement in this case, the motion to compel was mooted before it was filed.

without a guaranteed contingency percentage of the recovery." *Wells,* 907 F.2d at 371. In other words, plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever.

*Id.* at 246.

In stressing the incentives, which are also applicable when class attorneys receive a percentage of a common fund, the Fourth Circuit also noted that an attorney compensated on a contingency basis "has a strong economic motivation to achieve results for his client, precisely because of the risk accepted." *Id.* at 246 (citing *Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir.1986)("[t]he contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains.")). A contingency fee "automatically handles compensation for the uncertainty of litigation" because it "rewards exceptional success, and penalizes failure." *Id.* "Because the district court's ruling failed to recognize that contingency fees provide attorneys due consideration for the risk they undertake, it reduced counsel's fee to a level that few attorneys would have accepted at the outset of litigation, when success was by no means assured and the size of any settlement or judgment was unpredictable." *Id.*

The issues in this case also were novel and complex, which added substantially to class counsel's risk in undertaking this litigation. Bankruptcy Rule 3002.1 was enacted December 1, 2011, and has been amended and modified several times since then. Fed. R. Bankr. P. 3002.1 Advisory Committee Notes. While class counsel has brought individual cases involving Fed. R. Bankr. P. 3002.1, class counsel has never brought a class case based on violations of Bankruptcy Rule 3002.1, and to class counsel's knowledge, no private debtor has brought a successful

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS** **PAGE 15**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 20 of 29

nationwide class action based on that rule either.  <u>Exhibit 1</u>, Kellett Decl., p. 12, ¶ 41.

Class counsel has not seen mortgage servicers engaging in the behavior alleged of Wells Fargo – filing notice of payment changes in bankruptcy court that stealthily lowered debtors' monthly plan payments for their mortgages for loan modifications that they did not need, know about, or want.  *Id*. at p. 13, ¶ 42.

In addition to the other risks regarding bankruptcy class actions described above, including the risk that the bankruptcy court (or an appellate court) would limit any class to just the Western District of North Carolina, Wells Fargo might have defeated Plaintiffs' motion for a preliminary injunction or had the case dismissed on a motion to dismiss, which Wells Fargo was planning on filing in response to Plaintiffs' Second Amended Complaint, or Wells Fargo might have prevailed at the summary judgment stage.  Another serious risk facing class counsel was whether Plaintiffs could certify a damages class, given Wells Fargo's assertion that its remediation had already fully compensated class members, and the likely argument that class members' other types of damages would be too time consuming and difficult to prove, thus making trial not manageable and thus the class ineligible for certification pursuant to Fed. R. Civ. P. 23(b)(3).  *Id*. at p. 15, ¶ 45.

### 3.  The requested fee of 33% of the recovery is reasonable in light of fees awarded in comparable cases.[17]

Class counsel seek one-third of the common fund, which is a reasonable percentage of the recovery under the circumstances of this case.  A one-third percentage fee is also consistent with fee percentages found reasonable in cases when the common fund has been below $50 million.  *See,*

---

[17] This category includes the following *Barber/Allen* factors: (1) the time and labor required in the case, (5) the customary fee for similar work, and (12) the fee awards made in similar cases.

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**          **PAGE 16**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 21 of 29

*e.g., In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001)(reviewing expert report of 289 class action settlements from $1 million to $50 million and finding an "average attorney's fee percentage [of] 31.37%" and a median value of one-third). *See also* Newberg on Class Actions § 15:73 (5th Ed.). Another study has found that courts consistently award between 30% and 33% of the common fund. Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. of Empirical Legal Studies, 27, 31, 33 (2004). *See also Kidrick*, 1999 WL 1027050, at *2 (noting that use of a percentage method of calculating attorneys' fees is favored in class action settlements where there is a common fund, and that awards of 30%, 35%, and even 50% have been held reasonable); *Anselmo v. West Paces Hotel Group, LLC,* No. 9:09-cv-02466, 2012 WL 5868887, at *3 (D.S.C. 2012)("The approximate 33% for fees provided here is reasonable in light of all pertinent factors, including precedent and beneficial results obtained."); *Reed v. Big Water Resort, LLC,* No. 2:14-cv-01583, 2016 WL 7438449, at *13 n.3 ("[I]t should be noted that the request focusing solely on the cash value of the settlement is 31% of the value, which is in line with other cases approved in South Carolina federal court."); *Savani,* 121 F. Supp. 3d at 576 ("[A]n award of attorney's fees of 39.57% from the Subclass recovery is fair and reasonable given the results, risks, difficulty, complexity and magnitude of the litigation, and the highly specialized expertise, time and substantial resources required to prosecute it successfully."); Manual for Complex Litigation, § 14.121 at 188 (4th ed. 2011).

As noted *supra*, the percentage-of-recovery method is the "preferred" approach in the Fourth Circuit, and it is consistent with class action practice nationwide. The "vast majority" of courts of appeal now direct or permit district courts to award a percentage from the common fund. Manual for Complex Litigation, § 14.121 (4th ed. 2004). The percentage method provides

"appropriate financial incentives" necessary to "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y 2005). In addition, "from a public policy standpoint, the [percentage] method of calculating fees more appropriately aligns the interests of the class with the interests of class counsel—the larger the value of the settlement, the larger the value of the fee award." *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 WL 342042, at *2 (D. Mass. May 19, 1999)(internal quotation marks and citations omitted).

4.     **Class counsel's requested fee is supported by a lodestar cross-check.**

When evaluating percentage-of-recovery in fee applications in class actions, courts often perform what is known as a lodestar crosscheck—analyzing the value of counsel's work in relation to their hours and hourly billing rates—to confirm the reasonableness of the percentage award.[18] Kellett & Bartholow's hourly rates are reasonable and have been approved in several cases in various jurisdictions. *See* Exhibit 2, Bartholow Decl., p. 15-15, ¶ 56. A lodestar crosscheck in this case supports class counsel's fee request.

Multiplying class counsel's hours by its hourly rates yields a total lodestar of $1,407,347.00

---

[18] A lodestar crosscheck is not required and is, in some respects, problematic from a policy standpoint because it reintroduces the same bad policy and perverse incentives that the increasingly popular percentage-of-recovery method otherwise eliminates. As the Fourth Circuit noted in *Abrams*, "Fixing a lodestar fee in this contingency case was error and threatens to nullify the considerable advantages of contingency arrangements." *Abrams*, 605 F.3d at 245. If class counsel believe that courts will limit their fee to some multiple of their lodestar, then they will have the same imperfect incentives they would if courts used the lodestar method alone: to be inefficient, perform unnecessary projects, delay results, and overbill and overstaff work in order to run up their lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n. 5 (9th Cir. 2002)("The lodestar method is merely a cross- check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee…"). The lodestar crosscheck also caps the amount of compensation class counsel can receive, thereby misaligning their incentives from those of class, and reducing their rational incentive to achieve the largest possible award for the class.

for time spent through December 31, 2018. In a lodestar crosscheck, a "lodestar multiplier" is then applied, which accounts for the special risks, difficulties, expertise and results obtained in this case. As explained *supra*, the applicable *Allen/Barber* factors support the amount of fee contemplated by the settlement agreement. If the Court awards class counsel their requested fee of 33% of the recovery of approximately $13.8 million, ($4,562,704.18), such amount would represent a lodestar multiplier of 3.24, which is consistent with lodestar multipliers courts have held to be reasonable and necessary to fairly compensate class counsel for undertaking the foreseeable risk and delay in this case when they first began work on the issues in this litigation more than 2 years ago. *See* Manual for Complex Litigation §14.122 at 195-96 (4th ed. 2011) (stating as to common fund cases that "[t]he lodestar figure may be adjusted... to account for several factors including... the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment").

Lodestar multipliers between 2 and 4.5, or more, are generally considered reasonable.[19] *See, e.g.*, *Deloach v. Philip Morris Cos.*, No. 1:00CV01235, 2003 WL 23094907, at * 11 (M.D.N.C. Dec. 19, 2003) (finding multiplier of 4.45 appropriate to compensate for the "exceptional result" achieved); Newberg on Class Actions, Third §14.03 at 14-4 to 14-5 ("'Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees.'").[20]

---

[19] *See, e.g.*, *Singleton v. Domino's Pizza, LLC,* 976 F. Supp. 2d 665, 689 (D. Md. 2013); *Goldenberg v, Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 n.6 (approving 3.6 multiplier); *In re Cardinal Health Securities Litigation,* 528 F. Supp. 2d 752, 768 (S.D. Oh. 2007) (finding that a lodestar multiplier of 6 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel.").

[20] Class counsel billed at the following rates: Ms. Kellett - $500/hour; Mr. Bartholow - $400/hour; Mr.

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS** **PAGE 19**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 24 of 29

Class counsel anticipates spending a substantial amount of additional time prior to the March 4, 2018 hearing on confirmatory discovery, preparation for the final approval hearing, and on class administration.[21] Class counsel also has certain continuing obligations as class counsel after the settlement is approved, including assisting class members with questions and helping class members obtain payment should they encounter any trouble. These ongoing duties will likely require significant future investments of time by class counsel, without any additional or independent payment.

## 5. Class counsel is entitled to reimbursement of their reasonable expenses in the amount of $54,466.77.

Class counsel is also entitled to reimbursement of their reasonable expenses. Class counsel requests that the Court award them $54,466.77 in the reasonable expenses incurred. *See* Exhibit 1, Kellett Decl., p. 17-18, ¶ 54; Exhibit 4, Henderson Decl., p. 7, ¶ 24; Exhibit 5, Limon Decl., p. 7, ¶ 25.

## II. The Class Representatives have earned their service awards, which are reasonable and appropriate.

---

Gardner - $500/hour; Ms. Wells - $300/hour; Mr. Henderson - $350/hour; and Mr. Limon - $210/hour. Exhibit 1, Kellett Decl., p. 17, ¶¶ 50, 52; Exhibit 3, Gardner Decl., p. 9, ¶ 28; Exhibit 4, Henderson Decl., p. 6, ¶ 20; Exhibit 5, Limon Decl., p. 7, ¶ 26. Class counsel's rates are also consistent with normal hourly rates in the Charlotte market, and the same as the average hourly rates that class counsel charges clients who pay by the hour. Exhibit 3, Gardner Decl., p. 11, ¶ 41; Exhibit 4, Gardner Decl., p. 8, ¶ 30. Also, no one in the Charlotte area had the experience and capability to handle this highly specialized class action. While Mr. Gardner certainly has the skill and experience for this case, he was unable and unwilling to take it on without the additional skill and resources brought by Kellett & Bartholow. Exhibit 3, Gardner Decl., p. 9, ¶¶ 29-31, p. 10, ¶¶ 36-39. The Fourth Circuit Court of Appeals has recognized that "where it is reasonable to retain attorneys from other communities, ... the rates in those communities may also be considered," particularly "when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175, 179 (1994).

[21] This estimate does not include additional time for preparing the supplement to the fee application. Exhibit 1, Kellett Decl., p.16-17, ¶ 49, n. 16.

The Class Representatives request—and the Defendants do not oppose—a modest award of $10,000 for each plaintiff for their participation in this case and service to the class. In this case, the Class Representatives took active roles. <u>Exhibit 1</u>, Kellett Decl., p. 15-16, ¶ 46, and <u>Exhibit A</u> thereto, p. 40, ¶ 15.2. The Perezes provided information to counsel in preparing their lawsuit against Wells Fargo. <u>Exhibit 5</u>, Limon Decl., p. 4, ¶ 10. They gathered documents and otherwise answered Wells Fargo discovery, and each was deposed by Wells Fargo. *Id.* at p. 4, ¶¶ 10-12. They stayed well informed of their case and agreed to be class representatives in a global settlement of the issues in this class action lawsuit. *See id.*, <u>Exhibit 1</u>, Kellett Decl., p. 15-16, ¶¶ 46-47. The Cottons met with and spoke to counsel throughout the investigation and early discovery ordered by the Bankruptcy Court in their bankruptcy case, met with and spoke with their counsel in preparing the complaint, and have stayed informed and have participated in the litigation. Mr. Cotton personally attended the two-day mediation in Dallas, Texas on February 27 and 28, 2018. Both Mr. and Mrs. Perez and Mr. and Mrs. Cotton attended the hearing on the motion for preliminary approval of the settlement, and all of the class representatives plan to attend the final approval hearing on March 4, 2018. Importantly, Mr. Perez agreed to be interviewed by the New York Times, and the Cottons allowed the Times to write an article on their case, despite possible reputational harm. *See* <u>Exhibit 5</u>, Limon Decl., p. 5, ¶¶ 15-17, p. 6, ¶¶ 19, 21; <u>Exhibit 4</u>, Henderson Decl., p. 5, ¶¶ 15-18; <u>Exhibit 1</u>, Kellett Decl., p. 15-16, ¶¶ 46-47.

Awards to class representatives in the amount requested herein are reasonable and have been approved by judges in the Western District of North Carolina.[22] Particularly in light of

---

[22] *Scott v. Family Dollar Stores, Inc.*, 3:08-cv-00540-MOC-DSC, 2018 WL 1321048, at *2-3, 5 (W.D.N.C. March 14, 2018)(approving service awards of $10,000 to each of nine named plaintiffs).

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS** **PAGE 21**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 26 of 29

historical incentive awards both within and outside this District, the incentive awards sought are appropriate. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003)(collecting cases); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)(approving $25,000 incentive award). An empirical study published in 2006 suggests that the average award per class representative is about $16,000[.]" 4 Newberg on Class Actions § 11:38 (4th ed.): *Manuel v. Wells Fargo Bank Nat'l Ass'n*, No. 3:14-cv-238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016)(approving award of $10,000 for named plaintiff).

Indeed, the purpose of class representative service awards is not to compensate the named plaintiffs for the harm caused by the defendant but, rather, to fairly reward them for the time and effort they invested in the case and spent on behalf of the class. *See Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 807 F.3d 600, 613 (4th Cir. 2015) *cert denied* 137 S.Ct. 77 (2016) (instructing that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."). Plaintiffs properly earned their proposed service awards through their participation in the case. The Court should therefore approve the Plaintiffs' request for class representative service awards.

## CONCLUSION

Based on the reasons and authorities set forth above, Plaintiffs request that the Court award Class counsel's attorneys' fees in the amount of $4,562,704.18, expenses in the amount of $54,466.77, and the class representatives' service awards of $10,000.00 each as set forth herein.

Dated: January 3, 2019

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
NON-TAXABLE COSTS AND CLASS REPRESEATIVE SERVICE AWARDS** **PAGE 22**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 27 of 29

Respectfully submitted,

| | |
|---|---|
| /s/ Theodore O. Bartholow III ("Thad") | /s/ Frederick Henderson |
| Theodore O. Bartholow III ("Thad") | Wayne Sigmon, NC Bar #7318 |
| Texas State Bar No. 24062602 | Frederick L. Henderson, Jr., NC Bar #43586 |
| O. Max Gardner III | Sigmon & Henderson, PLLC |
| N.C. State Bar No. 6164 | 518 South New Hope Road |
| KELLETT & BARTHOLOW PLLC | Gastonia, North Carolina 28054 |
| 11300 N. Central Expressway, Suite 301 | p: (704) 865-6265 / f: (704) 874-1300 |
| Dallas, TX 75243 | |
| Tel.: (214) 696-9000 | /s/ Abelardo Limon, Jr. |
| Fax: (214) 696-9001 | Abelardo Limon Jr. |
| thad@kblawtx.com | Texas State Bar No. 1235770 |
| | Limon Law Office |
| | 890 W. Price Road |
| Attorneys for Plaintiffs | Brownsville, TX 78520 |
| | Tel.: (956) 544-7770 |
| | Fax: (956) 544-4949 |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on the parties listed below via ECF notification and electronic transmission or other method specified on January 3, 2019.

/s/ Theodore O. Bartholow, III ("Thad")
Theodore O. Bartholow, III ("Thad")

| | |
|---|---|
| Scott Vaughn | Warren L. Tadlock (via first class mail) |
| William Mayberry | Standing Chapter 13 Trustee |
| Mary Hackett | 5970 Fairview Road, Suite 650 |
| Andrew Atkins | Charlotte, NC 28210 |
| McGuire Woods LLP | |
| 201 North Tryon St., Suite 3000 | |
| Charlotte, NC 28202 | |
| svaughn@mcguirewoods.com | |
| bmayberry@mcguirewoods.com | |
| aatkins@mcguirewoods.com | |
| *Attorneys for Wells Fargo Bank, N.A.* | |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**          **PAGE 23**

Shelley K. Abel (via first class mail)
Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS**           **PAGE 24**

Case 3:18-cv-00499-RJC   Document 5   Filed 01/03/19   Page 29 of 29