# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CHRISTOPHER DEE COTTON | § | Bankruptcy Case No. 14-30287 |
| ALLISON HEDRICK COTTON | § | Chapter 13 |
| | § | |
| Debtors | § | |
| | § | |
| CHRISTOPHER DEE COTTON, | § | |
| ALLISON HEDRICK COTTON, | § | |
| IGNACIO PEREZ, and | § | Adv. Proceeding No. 17-03056 |
| GABRIELA PEREZ, | § | |
| *on behalf of themselves and all* | § | District Court Case No. 18-00499 |
| *others similarly-situated,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO & CO. and | § | |
| WELLS FARGO BANK, N.A. | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF THEODORE O. BARTHOLOW, III IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

Theodore O. Bartholow, III hereby declares:

1.      My name is Theodore O. Bartholow, III.  I am over the age of eighteen years, am of sound mind, and am competent to make this statement.  I have personal knowledge of the facts set forth below, which I state are true and correct.  I make this declaration of my personal knowledge in support of Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs and Class Representative Service Awards.  Docket No. 4.

**DECLARATION OF THEODORE O. BARTHOLOW, III IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**
**AND CLASS REPRESENTATIVE SERVICE AWARDS**                                      **PAGE 1**

Case 3:18-cv-00499-RJC   Document 5-2   Filed 01/03/19   Page 2 of 22

**Our initial investigation of Plaintiffs' claims in this case**

2.       I first learned that Wells Fargo was filing Rule 3002.1 payment change notices (PCNs) based on undisclosed and unapproved proposed "no-application modifications" (NAMs) of Chapter 13 debtors' mortgage loans when I was contacted on November 1, 2016, by my co-counsel, Mr. Limon, who had received NAM PCNs in two of his clients' Chapter 13 bankruptcy cases pending in the Southern District of Texas, one of which was the Perezes' case, Case No. 16-10292.

3.       Upon receiving the NAM PCNs from Mr. Limon on November 2, 2016, I immediately forwarded them to Ms. Kellett and Mr. Gardner and conferred with each of them about Wells Fargo's practice of filing these, which I found improper, alarming, and potentially extremely harmful to Chapter 13 debtors like the Perezes, who might not want or need the proposed modifications attached to Wells Fargo's PCNs.

4.       After receiving these NAM PCNs from Mr. Limon, on November 3, 2016, I also reached out to John Rao with the National Consumer Law Center and Tara Twomey with the National Association of Consumer Bankruptcy Attorneys, attorneys who I consider to be the preeminent experts in this country with respect to mortgage servicing in the context of consumer bankruptcy, for their input about the issues that were created by Wells Fargo's practice of filing these NAM PCNs.

5.       Also on November 3, 2016, another consumer bankruptcy attorney in South Texas, Mr. Enrique Solana, informed me that one of his clients had also received a Wells Fargo NAM PCN.

6.       On November 4, 2016, Mr. Gardner notified me that Mr. Henderson had at least

three Chapter 13 bankruptcy clients, including the Cottons, who had received NAM PCNs filed by Wells Fargo, and he forwarded Mr. Henderson's objection in the Cottons' case to Wells Fargo's most recent NAM PCN and motion for sanctions, filed in the Western District of North Carolina.

7.     At this point in time in early November 2016, we began drafting an adversary proceeding complaint against Wells Fargo on behalf of the Perezes.

8.     On November 7, 2016, Mr. Gardner notified me that he had identified at least three more NAM PCNs filed by Wells Fargo in the United States Bankruptcy Court for the Western District of North Carolina that were the subject of pending objections by the debtors in whose cases they were filed, which were set for hearing.

9.     On November 8, 2016, I reviewed PACER to identify Wells Fargo NAM PCNs filed in Chapter 13 cases pending in the Northern and Southern District of Texas, in an effort to get a sense for the scale of Wells Fargo's practice of filing these PCNs, and I spent time working with Mr. Henderson to prepare for the hearing on his clients' objections to Wells Fargo's NAM PCNs, which was continued by the Court to December 14, 2016.

10.     On November 21, 2016, my firm executed a representation agreement with the Cottons, which included a contingency agreement for attorneys' fees of 40% of the recovery. However, in the settlement negotiations for this case, we reduced our contingent fee to 33% of the Total Settlement Benefits.

11.     Subsequently in November of 2016, I worked with Mr. Henderson and the rest of our team to prepare deposition notices to be served to counsel for Wells Fargo regarding the NAM PCNs that Wells Fargo filed in the Cottons' case and to develop our litigation and discovery strategy for this case.

12.     Mr. Gardner, Ms. Kellett, and I assisted Mr. Henderson in preparing for the hearing on his objection to Wells Fargo's notice of mortgage payment change, and I traveled from Dallas, Texas to attend the December 14, 2016 hearing in Charlotte. At the hearing, the Court agreed that we should be able to conduct discovery regarding Wells Fargo's practices of filing NAM PCNs in the Western District of North Carolina. At that point, the Court set another hearing for January 10, 2017. In addition to the December 14, 2016 hearing, the Court ultimately held hearings on January 10 and 24, 2017, March 14, 2017 and April 25, 2017, as the discovery continued. I traveled to Charlotte and attended most of these hearings in person.

13.     After the December 14, 2016 hearing, I assisted Mr. Henderson in negotiating a consent order under which the Chapter 13 Trustees would provide Mr. Henderson a list of cases in which Wells Fargo had filed PCNs, with the idea that Wells Fargo would then provide us with all the PCNs in pdf format so that we could review them to identify the NAM PCNs. Cotton AP Docket No. 33.[1]

14.     Prior to the January 24, 2017 hearing, the three Chapter 13 Trustees in the Western District of North Carolina provided reports showing that Wells Fargo had filed 3,548 notices of payment change in open and closed chapter 13 bankruptcy cases in that district for the time periods they reviewed.

15.     At the January 24, 2017 hearing, counsel for Wells Fargo reported that it had

---

[1] Reference to the docket in the Cotton adversary proceeding, Adversary Proceeding No. 17-03056, pending in the United States Bankruptcy Court for the Western District of North Carolina, will be referred to as "Cotton AP Docket No.," and reference to the docket in the Cotton underlying bankruptcy proceeding, Bankruptcy Case No. 14-30287, pending in the same court, will be referred to as "Cotton BK Docket No." Reference to the docket in the Perez adversary proceeding, Adversary Proceeding No. 16-1008, pending in the United States Bankruptcy Court for the Southern District of Texas, will be referred to as "Perez AP Docket No.," and reference to the docket in the Perez underlying bankruptcy proceeding, Bankruptcy Case No. 16-10292, pending in the same court, will be referred to as "Perez BK Docket No."

identified approximately 100 cases where it had offered streamline modifications to debtors in the Western District of North Carolina in chapter 13 bankruptcy cases. Counsel also stated that Wells Fargo was still conducting its review, and that remediation of some kind was probably necessary.

16. After the hearing, co-counsel and I divided up the work and began to pull down from PACER and review Wells Fargo's PCNs to determine which ones were for no-application modifications. This process proved to be extremely tedious, inefficient, and expensive.

17. Wells Fargo's counsel eventually sent us pdfs of the payment change notices and docket sheets of the approximately 100 accounts Wells Fargo had self-identified where it had filed NAM PCNs for chapter 13 debtors in the Western District of North Carolina. We set up files for all of these debtors and pulled and catalogued additional documents from PACER, including the Wells Fargo proof of claim, other payment change notices, any objections to the payment change notices, and any resolution thereto, any motions for relief from stay filed by Wells Fargo, and any resolution thereto, any motion to dismiss filed by the Chapter 13 Trustee, and any resolution of same, among other relevant documents.

18. At the March 14, 2017 hearing, Mr. Henderson informed the Court that our investigation showed that of the 100 cases identified by Wells Fargo, only 22 had been resolved, and many others were never resolved. He stated that we probably would file a class action due to the fact that Wells Fargo's conduct was widespread and harmful to debtors and their plans.

19. The afternoon prior to the next hearing, counsel for Wells Fargo served me and my co-counsel with two charts of debtors in the Western District of North Carolina in whose bankruptcies Wells Fargo had filed NAM PCNs. The first chart listed debtors that Wells Fargo described as "impacted" by its conduct, the alleged number and amounts of altered payments

made by the Chapter 13 Trustees due to Wells Fargo's filings of the payment change notices, and the amount that Wells Fargo allegedly needed to refund/credit to "remediate" the stated "impact." Cotton AP Docket No. 25 – Exhibit A. The other chart also listed debtors in whose cases Wells Fargo had filed payment change notices for no-application modifications, but Wells Fargo asserted that those debtors were "not impacted" by its conduct. *Id.* at Exhibit E.

20. Despite the lateness of the production, with help from our team, I was able to review the PACER files of most of the debtors listed on Wells Fargo's charts and compare them with information we had compiled regarding those debtors prior to the hearing the next day. Thus, at the April 25, 2017 hearing, I was able to show the Court that the very first account on Wells Fargo's list had not been properly remediated, that the proposed "remediation" was not sufficient in several other cases, and that there were other inaccuracies and inconsistencies in Wells Fargo's unauthenticated charts of information regarding the identified debtors' accounts that rendered them unreliable. Based on our demonstration of the unreliability of Wells Fargo's claims regarding the identified accounts, the Bankruptcy Court was satisfied that further investigation of Wells Fargo's NAM PCN filing practices was warranted.

21. By this point, our continued investigation of Rule 3002.1 notices filed by Wells Fargo in Chapter 13 cases in other jurisdictions that Wells Fargo was filing NAM PCNs in chapter 13 debtors' cases across the country.

22. I took the lead on drafting the class action complaint. On June 6, 2017, with the draft complaint in nearly final form, I flew to Charlotte to meet with Mr. Cotton. During that meeting, my co-counsel Derick Henderson, Max Gardner, and I reviewed the complaint with Mr. Cotton and discussed the extreme importance of the issues presented by this class action, given

**DECLARATION OF THEODORE O. BARTHOLOW, III IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS
AND CLASS REPRESENTATIVE SERVICE AWARDS**          **PAGE 6**

Case 3:18-cv-00499-RJC   Document 5-2   Filed 01/03/19   Page 7 of 22

the significant harms that Wells Fargo's practices could cause for Chapter 13 debtors. We also discussed the Cottons' commitment and willingness to perform their duties as class representatives.

23.     After filing the Cottons' class action complaint on June 6, 2017, we filed a motion for a preliminary injunction on July 7, 2017, seeking to enjoin Wells Fargo's filing of NAM PCNs and other conduct related to its filing of NAM PCNs, such as filing motions to lift the automatic stay and initiating foreclosure proceedings against borrowers who had Wells Fargo NAM PCNs filed in their chapter 13 bankruptcy while this suit was pending. Since I had led the team in identifying and investigating the WDNC cases and other cases outside this jurisdiction in which Wells Fargo was filing notices of payment changes for no-application modifications, I was responsible for coordinating the preparation of exhibits of this type to file in advance of the preliminary injunction hearing.

24.     Prior to the August 23, 2017 hearing on our motion for preliminary injunction, Wells Fargo's executives filed declarations that confirmed our assertion that Wells Fargo engaged in the practices Plaintiffs had alleged, on a nationwide basis. *See* Cotton AP Docket No. 38 and Exhibits 1-5 thereto. Wells Fargo stated that it had stopped soliciting chapter 13 debtors for no-application modifications by January 6, 2017. *See id.* at Exhibit 1, ¶ 23. It also stated that it had put processes in place meant to ensure that it would not file any motions for relief from stay in chapter 13 cases in which Wells Fargo had sent debtors a no-application modification solicitation, and to ensure that it would not start or continue foreclosures on such debtors' homes. *See id.* at Exhibit 3, ¶ 20-24; Exhibit 4, ¶ 9-12.

25.     Wells Fargo's position at the preliminary injunction hearing was that no injunction

was necessary because Wells Fargo had ceased the practices and was starting remediation. I argued at the preliminary injunction hearing on behalf of Plaintiffs, at which we put on evidence demonstrating that Wells Fargo had not adequately or accurately remediated many of the affected consumers' accounts. Accordingly, we maintained that the preliminary injunction still was necessary despite Wells Fargo's alleged voluntary changes to its practices.

26.     The Court took the preliminary injunction under advisement and stated that it would read its opinion at hearing on September 6, 2017, which the Court later re-set for September 22, 2017.

**The mediated settlement process and further discovery**

27.     By this point, our firm had already taken three depositions in the Perez case, and Wells Fargo had produced 981 pages of documents relating to Mr. and Mrs. Perez's mortgage account. This discovery provided additional, extremely valuable information about Wells Fargo's policies and procedures with respect to its NAM program, its filing of NAM PCNs, its solicitations and communications with debtors and their counsel regarding its NAM solicitations, and how Wells Fargo treated debtors' mortgage loan accounts after Wells Fargo sent the NAM solicitations and/or NAM PCNs.

28.     On September 21, 2017, Wells Fargo's counsel contacted me regarding a proposal to attempt to settle the case through a structured mediation. At our insistence, as a condition for our agreement to engage in mediated settlement negotiations, Wells Fargo agreed to a moratorium on stay relief motions and foreclosures against Chapter 13 debtors that were subjected to its NAM solicitations. We contacted the Court, which moved the ruling hearing on Plaintiffs' motion for preliminary injunction to October 13, 2017.

29.     We thereafter negotiated a consent order with Wells Fargo, which the Court entered on September 25, 2017. Cotton AP Docket No. 58. Pursuant to the consent order, with certain limited exceptions, as long as good faith settlement negotiations were continuing, Wells Fargo agreed not to file NAM PCNs or move for relief from stay or foreclose with respect to chapter 13 borrowers who had received a no-application modification solicitation from Wells Fargo, on a nationwide basis.

30.     Thus, we effectively obtained an agreed preliminary injunction, which prevented Wells Fargo from foreclosing on or filing motions for relief from stay with respect to putative class members through the entire settlement process and through final approval of the settlement.

31.     As part of the settlement/mediation process, our firm requested extensive discovery with respect to each potential class member. I prepared the initial list of all the data points and other information we requested from Wells Fargo, including detailed account-level information for each class member, as well as relevant policies and procedures, which we believed was necessary to evaluate both the harm Wells Fargo's actions caused the class members, as well as an appropriate remedy. My co-counsel also provided substantial input with respect to the content and scope of discovery we were requesting.

32.     With the assistance and expertise of Mr. Nolland, our mediator, we negotiated the scope of discovery and the timing for Wells Fargo to produce it. Ultimately, we had to move the mediation to the end of February 2018 in order for us to obtain and process the voluminous information we obtained from Wells Fargo to evaluate settlement parameters.

33.     Wells Fargo's production is described in Ms. Kellett's declaration. It included policy and procedure information on Wells Fargo's no-application modifications and the payment

change notices it filed for same, as well as over 50 data points of loan-level and bankruptcy information for each class member's mortgage loan.

34.      In preparing for the mediation, in addition to Wells Fargo's production and the bankruptcy documents of class members, Ms. Kellett and I reviewed Fannie Mae streamline modification programs and numerous updates/bulletins published over the years since the program went into effect, Freddie Mac bulletins, servicing guides, and other online materials published by Freddie Mac regarding streamlined and cap-and-extend no-document mortgage modification programs, publicly available information about Wells Fargo with respect to its modification programs, the *Green* settlement Wells Fargo entered into with the United States Trustee and other settlements involving Wells Fargo and other mortgage servicers with respect to bankruptcy and other claims, all in order to identify information that would assist in developing settlement parameters.

35.      With significant input from Ms. Kellett, I drafted the two settlement demands we sent to Wells Fargo, as well as a mediation statement we sent to Mr. Nolland, with extensive materials attached. Ms. Kellett and I met with Mr. Nolland prior to the mediation on February 21, 2018. We communicated with Mr. Nolland throughout the discovery process and as we prepared for the mediation.

36.      Ms. Kellett, Mr. Henderson, Mr. Cotton, and I attended the February 27-28, 2018 mediation in Dallas, Texas.

37.      After two full days of negotiations, the parties ultimately came to an agreement on the primary settlement terms.

38.      Over the next six months, with Mr. Nolland's continued assistance, the parties

negotiated the final language of the settlement agreement.

**Mr. Bartholow's background and experience**

39.     I am co-counsel for Plaintiffs in the above-referenced proceeding. Karen L. Kellett, O. Max Gardner III, Derick Henderson, and Abelardo Limon are my co-counsel in this matter.

40.     I graduated from The University of Texas at Austin in 1998, with a B.A. in Philosophy.

41.     I received my Doctor of Jurisprudence degree from the Benjamin N. Cardozo School of Law in 2002.

42.     Since 2005, my legal practice has been focused exclusively on consumer and business bankruptcy, consumer litigation (with an emphasis on consumer litigation in bankruptcy-related matters), including in litigated cases across Texas and in New York, North Carolina, Alabama, and Louisiana. I have experience in litigation of consumer class actions involving lenders and lending issues, including class actions in bankruptcy court for conduct arising in bankruptcy proceedings.

43.     Immediately following graduation from law school, I began my career at London Fischer LLP in New York City, where my work focused on insurance defense litigation, including property damage, premises liability, personal injury, and extensive work on complex insurance and re-insurance matters related to the destruction of the World Trade Center on September 11, 2001.

44.     I joined my parents, Molly Bartholow, former Chapter 13 Trustee, and Toby Bartholow, at their consumer bankruptcy firm in Dallas, Texas, Bartholow & Bartholow P.C. in 2003. My work at Bartholow & Bartholow initially focused on Chapter 7 and Chapter 13 consumer bankruptcy matters, including assisting in litigation of contested motions and objections to claims

filed by secured and unsecured creditors against my consumer bankruptcy debtor clients.

45. In 2005, I became a partner with Bartholow & Bartholow P.C. I expanded my practice to include litigation of contested matters, including objections to claims and defending against mortgage servicers' motions for relief from stay, as well as adversary proceedings in bankruptcy court against creditors on behalf of my consumer debtor clients, as well as representing a regional bank as creditor's counsel in a handful of Chapter 13 cases. This litigation practice grew to encompass the substantial majority of my work with Bartholow & Bartholow P.C. through the end of 2009.

46. In December 2009, I formed Armstrong Kellett Bartholow P.C., a consumer bankruptcy and litigation firm, along with my partners, Gary Armstrong and Karen Kellett.

47. Armstrong Kellett Bartholow P.C. consolidated Bartholow & Bartholow's consumer bankruptcy and bankruptcy-focused consumer litigation practice with Mr. Armstrong's and Ms. Kellett's similar practices, which focused on pursuing claims on behalf of consumer debtors against banks, lenders, creditors, mortgage servicers and debt collectors in state and federal courts, including bankruptcy courts in the Northern, Eastern, and Southern Districts of Texas, and District Courts in the Northern and Eastern Districts of Texas.

48. With Armstrong Kellett Bartholow, I also expanded my practice to include consumer class action litigation in Federal District and Bankruptcy Courts, working extensively with my partner Karen Kellett and learning from her substantial consumer financial services class action experience. My litigation work with Armstrong Kellett Bartholow P.C. covered a broad range of consumer financial services issues and claims, most of which arose under or related to consumer bankruptcy cases, as well as claims pursuant to the Fair Debt Collection Practices Act,

the Texas Debt Collection Act, the Real Estate Settlement Procedures Act, and other related statutory and common-law causes of action. Several of these suits involved causes of action relating to violations of the Bankruptcy Code's automatic stay and discharge injunction provisions, as well as claims against banks, lenders, mortgage servicers and debt collectors for violations of other provisions of the Bankruptcy Code and Rules allegedly caused by systemic problems with their internal policies, practices, and procedures.

49. Also during my time at Armstrong Kellett Bartholow, Ms. Kellett and I successfully certified a contested district-wide class of consumer debtor borrowers against Countrywide, which was affirmed on direct appeal by the Fifth Circuit in *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*. Following class certification and the subsequent Fifth Circuit appeal, we won summary judgment on the merits in *In re Rodriguez*.

50. For the last six years, a substantial portion of our practice has been devoted to representing debtors and former debtors in cases in which the mortgage servicer failed to comply with Bankruptcy Rule 3002.1, and, as a result, wrongfully demanded undisclosed amounts and threatened and attempted foreclosure when such amounts were not paid. In many cases, mortgage servicers waited until after the debtors had successfully completed their chapter 13 plan before attempting to collect debts based on amounts not owed because they were not disclosed pursuant to Bankruptcy Rule 3002.1, and/or because the bankruptcy court had entered an order deeming the mortgage account current at the end of the case.

51. On September 10, 2015, one of the named partners of Armstrong Kellett Bartholow P.C. left the firm and the practice of law. As a result, Ms. Kellett and I formed a new firm, Kellett & Bartholow PLLC, shortly thereafter. I continue to engage in the same types of consumer and

bankruptcy litigation that I engaged in at Armstrong Kellett Bartholow P.C.

52.     Since 2010, I have been a frequent speaker at local, regional, and national continuing legal education seminars and conferences regarding consumer bankruptcy and, most commonly, consumer litigation, including consumer litigation in connection with bankruptcy matters. I was honored in 2012 to be selected by the National Association of Consumer Bankruptcy Attorneys ("NACBA") to represent consumer debtors' interests at the National Conference of Bankruptcy Judges' Rules Committee's "Mortgage Mini-Conference" in Portland, Oregon, which focused on evaluation of and consideration of potential improvements to the then-recently-established Bankruptcy Rule 3002.1. I also currently serve as NACBA's State Chair for the Northern District of Texas.

53.     Since 2012, I have taught bankruptcy attorneys at four-day seminars with Mr. Gardner regarding litigation of consumer debtors' bankruptcy and other claims. Even before Bankruptcy Rule 3002.1 became effective on December 1, 2011, we taught about this important new rule designed to allow debtors to truly bring their mortgages current in a chapter 13 as federal bankruptcy law intends. I have continued to make presentations on Bankruptcy Rule 3002.1 at the seminars, updating attorneys on the newest case law on Rule 3002.1, and government suits and consent orders relating to Rule 3002.1. Last year, I presented at one of Mr. Gardner's special two-day seminars devoted entirely to Bankruptcy Rule 3002.1.

54.     Currently, I am part of a team of attorneys seeking to serve as putative class counsel in complex class action litigation pending against Think Finance, LLC and other entities in the *Think Finance* chapter 11 bankruptcy proceedings pending in the Northern District of Texas. *See In re Think Finance, LLC* - Case No. 33964; *Banks v. Think Finance, LLC, et al.* – AP No. 17-

3121; *Browne v. Think Finance, LLC, et al.* – AP No. 17-3121; *Brice v. Think Finance, LLC, et al.* -18-3025; *Inscho v. Think Finance, LLC, et al.* – AP No. 17-3117, *Griffiths v. Think Finance, LLC, et al.* – AP No. 18-03026; *Price v. Think Finance, LLC, et al.* – AP No. 18-03319. In *Think*, the class plaintiffs allege that the Think debtors and others ran illegal payday loan schemes. The members of the various class actions assert claims in the Think Finance proceedings exceeding $100,000,000.00. In connection with the *Think Finance* litigation, I also sit on the unsecured creditors' committee in the Think Finance chapter 11 proceedings.

55.     As reflected on my *curriculum vitae*, a copy of which is attached hereto as <u>Exhibit</u> <u>A</u>, I have obtained numerous favorable written opinions in class actions and individual cases, all of which involved claims based on bankruptcy issues.

56.     Kellett & Bartholow's hourly rates have been approved in several cases in various jurisdictions:

- *In re Vallejo*, BK No. 11-70432, filed in the United States Bankruptcy Court for the Southern District of Texas, Docket Nos. 158 and 169;
- *In re Zarate*, BK No. 15-70087, filed in the United States Bankruptcy Court for the Southern District of Texas, Docket Nos. 79 and 81;
- *In re Irma Contreras*, BK No. 15-70201, filed in the United States Bankruptcy Court for the Southern District of Texas, Docket Nos. 53 and 57;
- *In re Adan Contreras, Jr.*, BK No. 15-70634, filed in the United States Bankruptcy Court for the Southern District of Texas, Docket Nos. 49 and 52;
- *Hammond v. Adam Ross Paul, Inc., et al*, Adv. No. 12-03227, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 71-73;
- *In re Dunigan*, BK No. 11-32989, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 68 and 76;
- *In re Kochukunju*, BK No. 10-32433, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 83 and 88;
- *In re Rowe*, BK No. 09-45027, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 129 and 135;
- *In re Stokey*, BK No. 13-31513, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 147 and 155;
- *Bruner-Halteman v. Educational Credit Management Corp.*, Adv. No. 14-03041, filed in

the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 71, 73, and 103

- *Amburgey v. Enzed, Inc.*, Adv. No. 14-04077, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket No. 49;
- *In re Wells*, BK Case No. 14-34240, filed in the United States Bankruptcy Court for the Northern District of Texas, Docket Nos. 70 and 77;
- *In re Sanchez*, BK Case No. 15-70592, filed in the United State Bankruptcy Court for the Southern District of Texas, Docket Nos. 77 and 96;
- *In re Salinas*, BK Case No. 16-34716, filed in the United States Bankruptcy Court for the Southern District of Texas, Docket Nos. 119 and 134
- *In re Lopez*, Adv. No. 13-07019, filed in the United States Bankruptcy Court for the Southern District of Texas, Docket Nos. 194, 274, and 275;
- *In re Franklin*, BK Case No. 10-20010, filed in the United States Bankruptcy Court for the Southern District of New York, Docket Nos. 159 and 160;
- *In re Cash*, BK Case No. 15-30510, filed in the United States Bankruptcy Court for the Western District of Louisiana, Docket Nos. 59 and 66;
- *In re Shankles*, BK Case No. 11-43075, filed in the United States Bankruptcy Court for the Eastern District of Texas, Docket Nos. 327 and 336;
- *Haynes v. Wells Fargo Bank, N.A.*, Case No. 2:08-cv-183, filed in the United States District Court for the Eastern District of Texas, Docket No. 168.

57.     My firm and I have vigorously prosecuted this suit to date.

58.     Prior to and during this case, Kellett & Bartholow PLLC has committed substantial resources in both time and expenses over the last two years in this case. I will continue to commit all the resources necessary to the case to bring it to completion, including through trial and any appeals, should the settlement ultimately not be approved. Our firm has sufficient resources to pursue this litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 3, 2019.

*/s/ Theodore O. Bartholow, III*
Theodore O. Bartholow, III

EXHIBIT A

# THEODORE O. BARTHOLOW, III ("THAD")
11300 N. CENTRAL EXPWY. SUITE 301 DALLAS, TEXAS 75243
TEL.: 214.696.9000 FAX: 214.696.9001 EMAIL: THAD@KBLAWTX.COM

Mr. Bartholow represents consumers in individual and class action litigation against mortgage servicers, debt collectors, and other creditors. His practice primarily focuses on matters related to his clients' consumer bankruptcy cases, violations of applicable debt collection laws, and other consumer-protection statutes. Mr. Bartholow has obtained numerous favorable published opinions on behalf of his clients, his written work has been published in the American Bankruptcy Institute's monthly Journal, amongst other publications, and he has represented the National Association of Consumer Bankruptcy Attorneys at a "Mortgage Mini-Conference" held by the Rules Committee of the National Conference of Bankruptcy Judges in 2012. Mr. Bartholow also lectures widely on all aspects of consumer litigation and consumer bankruptcy at local, regional and national seminars, including his work over the last several years as a regular co-teacher, along with O. Max Gardner, III, at Max Gardner's Bankruptcy Boot Camps and other litigation skills trainings for consumer litigators.

## BAR ADMISSIONS:

State: New York and Texas

Federal: Northern, Eastern, and Southern Districts of Texas (Bankruptcy and District Courts) and Southern District of New York (Bankruptcy and District Courts)

## EDUCATION:

BENJAMIN N. CARDOZO SCHOOL OF LAW, J.D. 2002, New York, New York
 - Cardozo Mediation Clinic
 - Executive Editor, Cardozo Journal of International and Comparative Law
 - Runner-up "Best Oralist" Jessup International Law Moot Court Competition (regional)

UNIVERSITY OF TEXAS AT AUSTIN, B.A. (Philosophy) 1998, Austin, Texas

SKIDMORE COLLEGE (Fall 1993- Spring 1995), Saratoga Springs, New York

## PROFESSIONAL ASSOCIATIONS & COMMUNITY INVOLVEMENT:

*Co-Presenter*, Max Gardner's Bankruptcy Boot Camp and Ultimate Litigation Boot Camp (2012-Present)

*State Chair*, National Association of Consumer Bankruptcy Attorneys (2016-Present/member since 2004)

*Member*, Dallas Area Young Bankruptcy Lawyers' Association (2009-Present)

*American Red Cross*, Disaster Volunteer (2007-Present)

*Advisory Board Member*, Safe Horizon Mediation Program (New York 2003-2005)

*Volunteer Mediator*, Civil Court and Small Claims Court for New York City (2001-2005)

## NOTEWORTHY DECISIONS:

*Anderson v. Wells Fargo Bank, N.A.*, 2018 WL 3426269 (N.D. Tex. July 13, 2018).

*In Bruner-Halteman (Bruner-Halteman v. ECMC)*, 2016 WL 1427085 (Bankr. N.D. Tex. April 8, 2016).

*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 2015 WL 1207012 (Bankr. S.D. Tex. Mar. 12, 2015)(slip copy).

**NOTEWORTHY DECISIONS (CONT.):**

*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 2015 WL 5438850 (Bankr. S.D. Tex. Sept. 24, 2015)(slip copy).

*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 2015 WL 7572097 (Bankr. S.D. Tex. Nov. 24, 2015)(slip copy) leave to appeal denied by *Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 2016 WL 4546884 (S.D. Tex. Sept. 1, 2016)(slip copy).

*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 2017 WL 3382099 (Bankr. S.D. Tex. Mar. 20, 2017)(slip copy).

*Lopez v. Portfolio Recovery Associates, LLC*, 2017 WL 3336086 (S.D. Tex. Aug. 4, 2017)(slip copy).

*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 576 B.R. 84 (Bankr. S.D. Tex. Sept. 28, 2017).

*In re Trevino (Trevino v. HSBC Mortgage Services, Inc. et al.)*, 535 B.R. 110 (Bankr. S.D. Tex. 2015).

*Haynes v. Wells Fargo Bank, N.A.*, 2014 WL 2761260 (E.D. Tex. 2014).
*Haynes v. Wells Fargo Bank, N.A.*, 2015 WL 6746256 (E.D. Tex. 2015).

*In re Hammond (Hammond v. Adam Ross Paul, Inc. et al.)*, 2014 WL 2761260 (Bankr. N.D. Tex. 2014).

*Bibolotti v. American Home Mortgage Servicing, Inc. et al.*, 2013 WL 2147949 (E.D. Tex. 2013).

*In re Rodriguez (Rodriguez v. Countrywide Home Loans, Inc. et al)*, 695 F.3d 360 (5th Cir. 2012).
*In re Rodriguez (Rodriguez v. Countrywide Home Loans, Inc. et al)*, 517 B.R. 724 (Bankr. S.D. Tex. 2014).

*McGuiness v. Dodeka LLC et. al*, Slip Copy, 2010 WL 1856450 (E.D. Tex. 2010).

*In re Pastran*, Slip Copy, 2010 WL 2773243 (Bankr. N.D.Tex. 2010).
*In re Pastran*, 462 B.R. 201 (Bankr. N.D. Tex. 2011).

*In re Gulley (Gulley v. Countrywide)*, --- B.R. ----, 2010 WL 3342193 (Bankr. N.D.Tex., August 23, 2010) (NO. 07-33271-SGJ-13, ADV 08-03467).

*In re Guevara (Guevara v. Wells Fargo)*, (unpublished) Opinion and Order on Motion for Summary Judgment (J. Hale) TXNB Adv. Proc. No. 08-03191 Docket No. 68 (2009), affirmed on appeal by TXND: *In re Guevara (Guevara v. Wells Fargo)*, (J. Ferguson) Civil Action No. 3:10-cv-0547-F Docket No. 13 (8/18/2010).

**PUBLICATIONS & HONORS:**

National Association of Consumer Bankruptcy Attorneys (NACBA), *Distinguished Service Award*, 2016.

American Bankruptcy Institute (ABI) Journal, April 2014 33. Am. Bankr. Inst. J. 44 (2014), *Are Post-Discharge Loan Modification Solicitations the New Sears Cases?*

National Conference of Bankruptcy Judges Rules Committee's Mortgage Mini-Conference, Representative on behalf of NACBA, Portland, Oregon 2012.

## SPEAKING ENGAGEMENTS:

Max Gardner's Regulation X and Z Boot Camp, July 2018

University of Texas Advanced Consumer Bankruptcy Conference – Discharge & Dischargeability, June 2018

Northern District of Texas Bankruptcy Bench-Bar – Mortgage Issues in Bankruptcy, May 2018

National Conference of Bankruptcy Judges Annual Conference, October 2017

ABI Media Webinar - SCOTUS opinion in Midland v. Johnson, May 2017

National Consumer Law Center (NCLC) Consumer Rights Litigation Conference - Recovering Legal Fees Under Fee Shifting Statutes, October 2016

ABI Midwest Fall Leadership Conference - Great Debates: Does filing a time-barred proof of claim violate the FDCPA?, 2016

University of Texas School of Law's 12th Annual Consumer Bankruptcy Practice Seminar - RESPA's Impact on Chapter 13 and Monthly Escrow Payments, 2016

National Consumer Law Center - TCPA Webinar, 2016

Texas Bar Association Bankruptcy and Commercial Law Section's International Seminar Bali, Indonesia - Using the FDCPA and RESPA in Bankruptcy, 2015

ABI Annual Winter Leadership Conference - Great Debates: Does filing a time-barred proof of claim violate the FDCPA?, 2015

Jay L. Westbrook Bankruptcy Conference - Using RESPA in Chapter 13, 2015

FDCPA and Bankruptcy Proofs of Claim Webinar with Max Gardner, 2015

ABI Annual Spring Meeting - Consumer Track: Use of Governmental Assistance Programs in Chapter 13, 2014

Texas Bar Association Annual Advanced Consumer Bankruptcy / Bankruptcy 101 Course - Prosecuting and Defending Motions for Relief from Stay, 2013, 2014, 2015, 2016

NACBA Annual Convention – Various Topics, 2012, 2015, 2016, 2017

Oklahoma Bar Association 26th Annual Advanced Bankruptcy Seminar, 2011

West Texas Bankruptcy Institute - Reasons to Choose Chapter 13 instead of Chapter 7, 2010

NACBA Members Only Conferences – Various Topics, 2010, 2011, 2013, 2014

Max Gardner's Bankruptcy Boot Camp and Max Gardner's Litigation Skills Seminar [numerous]

## MEDIA COVERAGE:

Matt Egan, *New Wells Fargo Scandal Over Modifying Mortgages Without Authorization*, CNN Money, June 15, 2017, available at http://money.cnn.com/2017/06/15/investing/wells-fargo-mortgage-modification-lawsuit/index.html.

**MEDIA COVERAGE (CONT.):**

Michael Hiltzik, *Borrowers Say "Stealth" Mortgage Modifications by Wells Fargo Could Cost Them Their Homes*, Los Angeles Times, June 15, 2017, available at http://www.latimes.com/business/hiltzik/la-fi-hiltzik-wells-mortgages-20170615-story.html.

Gretchen Morgenson, *Wells Fargo Is Accused of Making Improper Changes to Mortgages*, N.Y. Times, June 14, 2017 available at https://www.nytimes.com/2017/06/14/business/wells-fargo-loan-mortgage.html.

Jonnelle Marte, *Lawsuits Claim Wells Fargo Modified Mortgages Without Customer Permission*, Washington Post, June 2017, available at https://www.washingtonpost.com/news/get-there/wp/2017/06/15/lawsuits-claim-wells-fargo-modified-mortgages-without-customer-permission/?utm_term=.af610dd02248.

Kevin Krause, *Bankrupt Allen Couple Sues NTTA for Trying to Collect $26,000 in Tolls and Fees*, Dallas Morning News, Dec. 2016, available at https://www.dallasnews.com/news/courts/2016/12/29/went-bankrupt-say-tollway-agency-still-demanded-26000-tolls-fines-erased-court.

*Facing Foreclosure? With Document Scandal, It's Vital to Act*, Dallas Morning News, Oct. 2010, available at https://www.dallasnews.com/business/money/2010/10/22/Facing-foreclosure-With-document-scandal-5011.

**LEGAL EMPLOYMENT HISTORY:**

KELLETT & BARTHOLOW PLLC, *Partner* (October 2015-Present)
Dallas, Texas

ARMSTRONG KELLETT BARTHOLOW PLLC, *Partner* (December 2009-October 2015)
Dallas, Texas

BARTHOLOW & BARTHOLOW P.C., *Partner* (2008-2009)
Dallas, Texas

BARTHOLOW & BARTHOLOW / LAW OFFICE OF MOLLY BARTHOLOW, *Associate* (2004-2008)
Dallas, Texas

BOGRE & BARTHOLOW, *Partner* (2003-2004)
Brooklyn, New York

LONDON FISCHER LLP, *Associate* (2002-2003)
New York, New York

**ARTWORK/ EXHIBITIONS:**

*Bar Matchless Gallery*, Williamsburg (Bklyn), NY (2004)

*Dallas Public Library*, Dallas, Texas (2009)

Online portfolio: www.thadbartholow.com