IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CHRISTOPHER DEE COTTON | § | Case No. 14-30287 |
| ALLISON HEDRICK COTTON | § | Chapter 13 |
| | § | |
| Debtors | § | |
| | § | |
| CHRISTOPHER DEE COTTON, | § | |
| ALLISON HEDRICK COTTON, | § | |
| IGNACIO PEREZ, and | § | Adv. Proceeding No. 17-03056 |
| GABRIELA PEREZ, | § | |
| *on behalf of themselves and all* | § | District Court Case No. 18-00499 |
| *others similarly-situated,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO & CO. and | § | |
| WELLS FARGO BANK, N.A. | § | |
| | § | |
| Defendants. | § | |

PLAINTIFFS' SUPPLEMENT TO THEIR MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE
COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

Plaintiffs Christopher Dee Cotton, Allison Hedrick Cotton, Ignacio Perez, and Gabriela

Perez ("Plaintiffs"), individually and on behalf of all other similarly situated individuals, file this

supplement to their motion and memorandum in support of their request for an award of attorneys'

fees, expenses, and class representative service awards. For the reasons listed in the earlier

memorandum and those listed below, Plaintiffs respectfully request that the Court award the attorneys' fees, expenses, and class representative service awards in the amounts requested.[1]

1.      After a hearing on October 24, 2018, the bankruptcy court entered an order preliminarily approving the proposed class settlement of this case on November 2, 2018. Cotton AP Docket No. 110.[2]

2.      As was required by the Settlement Agreement, the parties filed a joint motion for this Court to withdraw the reference of this class action to rule on whether the settlement should be granted final approval pursuant to Fed. R. Civ. P. 23. Docket No. 1. *See* Docket No. 11, Exhibit 1.A, Settlement Agreement, p. 19, ¶ 2.6. The bankruptcy court recommended withdrawal of the reference, Docket No. 3, and this Court entered its order withdrawing the reference on January 11, 2019, so this nationwide class action is now pending in this Court. *See* Docket No. 6.

3.      In addition, the bankruptcy court obtained from this Court a hearing date of March 4, 2019 for the final fairness hearing and provided it to the parties so that they could place the correct dates and deadlines in the notices to be mailed to the class members.

4.      Pursuant to the terms of the preliminary approval order, the Settlement Administrator timely mailed the bankruptcy court-approved class notices to the 5,975 class members on December 7, 2018. *See* Docket No. 11-10, Parks Declaration, p. 4, ¶ 9. The Settlement Administrator successfully served 99% of the class members with direct notice of the

---

[1] Plaintiffs attach to this memorandum the declarations of Karen Kellett (Exhibit 1), John Rao (Exhibit 2), David Badger (Exhibit 3), Wayne Sigmon (Exhibit 4), and Linda Simpson (Exhibit 5), and the curriculum vitae of Megan Clontz (Exhibit 6) in support of their fee motion.

[2] Docket entries in the bankruptcy adversary proceeding, Adversary Proceeding No. 17-03056, previously pending in the United States Bankruptcy Court for the Western District of North Carolina will be referred to as "Cotton AP Docket No. x." Docket entries in the above-captioned District Court proceeding, Case No. 18-00499, shall be referred to as "Docket No. x."

PLAINTIFFS' SUPPLEMENT TO CLASS COUNSEL'S MOTION AND MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
AND NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS      PAGE 2

proposed settlement. *Id.* at p. 5, ¶ 13. As of February 15, 2019, there were only 55 class members

whose notices remained undeliverable. *Id.* This is considered remarkably low in the Settlement

Administrator's experience. *Id.*

5.      The Settlement Administrator also mailed a copy of the Subclass 1, Subclass 2, and

Subclass 3 class notices to all Chapter 13 Trustees in the nation on December 7, 2018. *Id.* at p. 4,

¶ 9.

6.      The notices sent to class members stated "Class Counsel will file their fee

application with the District Court by **January 3, 2019** and will place it on the website at

www.CottonSettlementAdministrator.com." *See, e.g.*, Docket No. 11-10, Parks Declaration, Part

V, ¶ 12 of Exhibits B, C, and D thereto.

7.      Plaintiffs filed their motion and memorandum in support of their request for

attorneys' fees and expenses on January 3, 2019, as required by the preliminary approval order.

*See* Docket Nos. 4 and 5.

8.      Class Counsel sent the fee motion, memorandum in support, and all exhibits to the

Settlement Administrator with instructions to place them on the Class Website, and the

Settlement Administrator did so. Docket No. 11-10, Parks Declaration, p. 6, ¶ 15.

9.      Per the preliminary approval order, class members were required to file and serve

any objections to any part of the proposed settlement by February 2, 2019. See Docket No. 5-1,

Preliminary Approval Order, p. 87-88, ¶ 20-21. Any class members wanting to exclude themselves

from the settlement also had to serve requests for exclusions by February 2, 2019. *See id.* at p. 5,

¶ 10. Copies of any objections and opt outs were to be served on Class Counsel, and these deadlines

and instructions were clearly stated in the notice mailed to each class member. *See* Docket No. 11-

10, Parks Declaration, Parts VI – VIII of Exhibits B, C, and D thereto (Class Notices).

10.     As of the filing of this supplement on February 18, 2019, Class Counsel has not received any objection from any class member or any Chapter 13 Trustee.  No objections have been filed with the Court.  <u>Exhibit 1</u>, Kellett Declaration, p. 2, ¶ 2.  The Settlement Administrator received one opt-out notice from a single mortgagor, and opt-out notices from a couple, who would have received one settlement check had they stayed in the class.  *See* Docket No. 11-10, Parks Declaration, Exhibit E (List of Opt Outs).

**The declaration of John Rao of the National Consumer Law Center (NCLC) provides further support for payment of attorneys' fees to Class Counsel in the amount of 33% of the common fund.**

11.     Class Counsel submits the declaration of John Rao in support of Class Counsel's motion for their award of attorneys' fees in the amount of 33% of the common fund.[3]  As can be seen by his declaration, Mr. Rao is one of the most experienced attorneys in the country on issues of mortgage servicing and modifications and consumer bankruptcy law.  <u>Exhibit 2</u>, Rao Declaration, p. 1-5, ¶ 2-18.  In particular, he has had (and has) many roles in connection with the implementation and subsequent revision of Fed. R. Bankr. P. 3002.1, which is the Bankruptcy Rule at issue in this case, *id.* at p. 2, ¶ 9; p. 3, ¶ 13; p. 4, ¶ 16; p. 7, ¶ 23, as well as with mortgage modifications for debtors in bankruptcy.  *Id.* at p. 2-3, ¶ 5-13; p. 4, ¶ 16-17.

12.     Mr. Rao highlights all the reasons set forth in Class Counsel's memorandum that support the fee award requested in this case.  First, in his opinion, Class Counsel obtained "outstanding results" in a settlement that provides "exceptional relief for class members."  *Id.* at

---

[3] The monetary common fund in this case, "Total Settlement Benefits," is $13,826,376.40 and is comprised of the $13,460,000.00 in cash that Wells Fargo is contributing to the settlement fund, plus the $366,376.39 of remediation provided by Wells Fargo.  Docket No. 11-1.A, Settlement Agreement, p. 15, ¶ 1.53.

p. 9, ¶ 29-30. Mr. Rao also highlights the importance of the injunctive relief Class Counsel obtained for the class members, noting that it is often more valuable than monetary relief for obligors on mortgage loans, and explaining why it was so important in this case. *Id.* In addition, Mr. Rao states the importance of Class Counsel stopping Wells Fargo's no-application modification solicitation practices and its practice of filing payment change notices for no-application modifications for debtors in Chapter 13 bankruptcy cases. *Id.* at p. 9, ¶ 30.

13. Mr. Rao also describes how complicated the issues were and Class Counsel's skill in obtaining the discovery necessary not only to prosecute the case, but also to provide appropriate relief to class members based on an array of dynamics in their bankruptcy cases and with respect to the status of their mortgage loans. *Id.* at p. 5-9, ¶ 19-28. Indeed, Mr. Rao's opinion is that Class Counsel was "uniquely qualified" in the country to represent the class members in this lawsuit. *Id.* at p. 7, ¶ 25. Moreover, Mr. Rao highlighted the incredible risks Class Counsel took in bringing this case. *Id.* at p. 9, ¶ 28; p. 10, ¶ 32-34. For all these reasons, Mr. Rao's opinion is that Plaintiffs' request for attorneys' fees of 33% of the common fund is reasonable and appropriate. *Id.* at p. 10, ¶ 32.

**The fact that not one class member objected to the settlement supports Plaintiffs' request for an award of attorneys' fees in the amount of 33% of the settlement fund.**

14. The Settlement Administrator successfully mailed the court-approved notice to 99% of the class members. The notice stated that Class Counsel would seek 33% of the Total Settlement Benefits, expenses of up to $100,000, and explained how class members could object to the settlement, including the request for attorneys' fees and expenses. Unlike most other class actions, Class Counsel filed their motion for attorneys' fees and expenses, with all exhibits, on January 3, 2019, 30 days prior to the objection deadline, stated in the notice that their fee motion

would be placed on the settlement website, and caused the fee motion, memoranda, and attached exhibits to be placed on the settlement website. *See* p. 2-3, ¶ 4, 6-8, *supra*.

15.     In addition, unlike most other cases, class members either currently are represented by a consumer Chapter 13 bankruptcy attorney, or previously were represented by a Chapter 13 bankruptcy attorney.  Yet not one class member objected to the settlement or the attorneys' fees requested, thereby indicating their agreement to the settlement, including its proposed attorney fee award. *See Smith v. Res-Care, Inc.*, at * 8 (approving fee award of 33% of the settlement fund where 92% of class members received actual notice and no one objected to any of the settlement's terms.)  "The Class Members' silence is tacit approval of the attorneys' fees and costs [settlement] term." *Id. See also Phillips v. Triad Guaranty Inc.*, 1:09CV71, 2016 WL 2636289, at * 8 (M.D.N.C. May 9, 2016)(fact that class members were mailed claim packages but no one objected "demonstrates the class members' approval of the fees request and is further support of the reasonableness of the request.").

**Class Counsel's fee request is also supported by any lodestar cross check with an appropriate multiplier.**

16.     Plaintiffs' attorneys accepted the Cottons' class-action case on a contingency fee arrangement, with attorneys' fees to be sought of up to 40% of any common fund provided in a class action settlement. *See* Exhibit 1, Kellett Declaration, p. 2, ¶ 3.  As such, as set forth in the memorandum, the Court should award fees on a percentage-of-the-fund method.  Also as set forth in the memorandum and attached declarations, and in Mr. Rao's expert opinion, an award of 33% of the common fund is an appropriate award of attorneys' fees in this case. *See, e.g., Kruger v. Novant Health, Inc.*, 1:14CV208, 2016 WL 6769066, at * 3 (M.D.N.C. Sept. 29, 2016)(citing cases stating that the award of attorneys' fees in common fund cases should be based on a percentage of

the recovery and noting that courts within the Fourth Circuit have cautioned against the lodestar approach in determining attorneys' fees in common fund cases such.).

17.     Still, Class Counsel provided information and declarations supporting their hourly rates and lodestar through December 31, 2018.[4]  Plaintiffs also submit the declarations of David Badger, Wayne Sigmon, and Linda Simpson in support of the hourly rates Class Counsel charged in this case for use in any lodestar cross check.[5]

18.     As set forth in Plaintiffs' memoranda and the declarations in support of Plaintiffs' fee motion, if the Court conducts a lodestar cross check, it is appropriate to apply a multiplier as requested by Plaintiffs in light of the special skills, risks and difficulties of this case, and is needed to attract skilled attorneys such as Class Counsel to undertake such litigation.[6]  *See also*  Exhibit 2, Rao Declaration, p. 10, ¶ 34.

WHEREFORE, Plaintiffs respectfully request that the Court award Class Counsels' fees and non-taxable costs and Class Representative service awards in the amounts set out in Plaintiffs' fee motion, filed with this Court at Docket No. 4.

Dated: February 18, 2019.

---

[4] Docket No. 5, p. 18-20; Docket No. 5-1, Kellett Declaration, p. 4, ¶ 12, p. 6, ¶ 21, p. 16, ¶ 48-53, p. 18, ¶ 57; p. 19-20, ¶ 59-62; Docket No. 5-2, Bartholow Declaration, p. 15, ¶ 56; Docket No. 5-3, Gardner Declaration, p. 9- 11, ¶ 28-41; Docket No. 5-4, Henderson Declaration, p. 10-11, ¶ 36-41; Docket No. 5-4, Limon Declaration, 6-8, ¶ 20-30.

[5] Exhibit 3, Badger Declaration, Exhibit 4, Sigmon Declaration, Exhibit 5, Simpson Declaration.

[6] Where the litigation risks are immense and there is a risk of receiving little or no recovery, like this one, a high-risk multiplier is appropriate.  *See id.* at * 5 (awarding fees of $10,666,666.00, or 33 1/3 of the settlement fund, which equaled a 3.69 multiplier of the lodestar).  "Courts both within this [Fourth] Circuit and across the country routinely approve fees awards with higher lodestar multipliers."  *Id.* (citing cases approving lodestar multipliers of between 3.4 and 4.3, multiplier of 4.45, multiplier of 8.3, multiplier of 5.2, multiplier of 6, multiplier of 6.96, multiplier of 4.3, multiplier of 4.65, multiplier of 2.5 - 4, multiplier of 8.9, multiplier of 5.5, and multiplier of 6); *Nieman v. Duke Energy Corp.*, No. 3:12-cv-456-MOC-DSC, 2015 Dist LEXIS 148260, at * 4 (W.D.N.C. Nov. 2, 2015)(multiplier of 4.5 "would, in the circumstances of this case, be inappropriately too low.").

Respectfully submitted,

| | |
|---|---|
| /s/ Karen L. Kellett | /s/ Frederick Henderson |
| Karen L. Kellett | Wayne Sigmon, NC Bar #7318 |
| Texas State Bar No. 11199520 | Frederick L. Henderson, Jr., NC Bar #43586 |
| O. Max Gardner III | Sigmon & Henderson, PLLC |
| N.C. State Bar No. 6164 | 518 South New Hope Road |
| KELLETT & BARTHOLOW PLLC | Gastonia, North Carolina 28054 |
| 11300 N. Central Expressway, Suite 301 | p: (704) 865-6265 / f: (704) 874-1300 |
| Dallas, TX 75243 | |
| Tel.: (214) 696-9000 | /s/ Abelardo Limon, Jr. |
| Fax: (214) 696-9001 | Abelardo Limon Jr. |
| kkellett@kblawtx.com | Texas State Bar No. 1235770 |
| | Limon Law Office |
| | 890 W. Price Road |
| | Brownsville, TX 78520 |
| | Tel.: (956) 544-7770 |
| | Fax: (956) 544-4949 |

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the parties listed below via ECF notification and electronic transmission or other method specified on February 18, 2019.

/s/ Caitlyn N. Wells
Caitlyn N. Wells

Scott Vaughn
William Mayberry
Mary Hackett
Andrew Atkins
McGuire Woods LLP
201 North Tryon St., Suite 3000
Charlotte, NC 28202
svaughn@mcguirewoods.com
bmayberry@mcguirewoods.com
mhackett@mcguirewoods.com
aatkins@mcguirewoods.com
*Attorneys for Wells Fargo Bank, N.A.*

Shelley K. Abel (via first class mail)
Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202

Warren L. Tadlock
Standing Chapter 13 Trustee
5970 Fairview Road, Suite 650
Charlotte, NC 28210